**William Brooks ARMSTRONG,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 540–93.**

Court of Criminal Appeals of Texas,
En Banc.

March 29, 1995.

Frank Jackson, Judith L. White, Dallas, for appellant.

Tom Wells, County Atty., Kerye Ashmore, Asst. County Atty., Paris, Robert Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

PER CURIAM.

A jury convicted appellant of murder, pursuant to V.T.C.A. Penal Code, § 19.02, and sentenced him to life imprisonment. Appellant's conviction was affirmed by the Sixth Court of Appeals. *Armstrong v. State,* 838 S.W.2d 323 (Tex.App.—Texarkana 1992), *vacated on other grounds,* 845 S.W.2d 909 (Tex. Cr.App.), *on remand* 850 S.W.2d 230 (Tex. App.—Texarkana 1993). On appeal appellant argued that the trial court erred in denying his motion for new trial based on misconduct by both a juror and the prosecutor during voir dire. The court of appeals held that there was no misconduct and that the trial court did not abuse its discretion in denying appellant's motion for new trial. We granted appellant's petition for discretionary review to examine this holding. Tex.R.App. Pro., Rule 200(c)(3).

## I.

On appeal, appellant claimed there was juror misconduct during voir dire because panel member Marilyn Thornburrow, who subsequently became the jury foreperson, did not disclose her relationship to the county attorney, Tom Wells, who was one of the prosecutors in appellant's trial. Appellant claimed that he was harmed because, had he known of the relationship, he would have used either a challenge for cause or a peremptory strike against Thornburrow.

During voir dire, the trial judge asked the following questions:

"Now, are there any of you who have any—well, I will say are so well acquainted with Mr. Wells—I know that most of you know him, he hopes that all of you know him—or with Mr. Ashmore in his office, or Mr. Chuck Superville, that's another assistant, or Mr. Scott McDowell? They are the prosecution staff. Are there any of you who are so well connected with them or acquainted or associated with them that it might affect your verdict? I take it there are none.

Are there any of you who have any special connection with the County Attorney's office, perhaps a close friend in the office, secretary, investigator or the like?"

Thornburrow, along with all the other panel members, did not respond to these questions.

Later, the prosecuting attorney asked the following question:

"Sometimes we fail to ask a questions (sic) that touches on your qualifications. My question to you at this time is is there anything that any of you can think of that touches on your qualifications not in just any case but in this specific case that you think needs to be pointed out to me and Mr. Jackson [the defense attorney] and the court at this time? If so, raise your hand and you may want to approach the bench and tell it to the court out [of] the presence of the other jurors."

Thornburrow did not respond to this question. For his part, defense counsel did not ask any questions concerning possible relationships between any of the panelists and any of the prosecutors.

At the hearing on appellant's motion for new trial, there was undisputed evidence that Thornburrow had known Wells for approximately 26 or 27 years and described him as a friend; Thornburrow's husband and Wells had been the "best man" in each other's weddings; Thornburrow's husband was serving as Wells' campaign treasurer during the time of trial and had served in that capacity in the 1988 campaign.

Thornburrow testified at the hearing on the motion for new trial that she had answered all the questions at the voir dire honestly. She testified that her silence in response to the first question by the judge was the appropriate response because her relationship with Wells would not affect her ability to be fair as a juror:

"I answered his question fairly. His question was did we know anyone well enough to keep us from being fair, and my response indicated that I knew no one well enough to keep myself from being fair."

She testified that her silence in response to the second question by the judge was the appropriate response because she understood the question to be asking about auxiliary staff in the county attorney's office:

"That was the second question that the judge asked. He had already asked the question about the prosecutors and I responded that I could be fair. When the second question was asked, I took that to

mean the auxiliary help in the county attorneys office, and I do not know anyone in the county attorney's office."

She testified that she did not respond to the prosecutor's question because:

"I felt that I had already answered the question.... I felt like I had already responded about the fairness and I did not come forward."

Thornburrow also testified that she was expecting someone to ask whether or not she knew Wells. No one did:

"Q. [defense counsel] But you say in your affidavit that you were waiting to be asked the question about your relationship to Tommy Wells and no one ever did. Correct?

A. I was assuming that you would ask a question of all the jury panel."

The court of appeals, citing *Jones v. State,* 596 S.W.2d 134, 137 (Tex.Cr.App. [Panel Op.] 1980), held that there was no juror misconduct. No material information was "withheld" because no one ever asked the panelists if they knew or were acquainted with the prosecutors—no one ever asked Thornburrow if she knew or was acquainted with Wells. The questions by the trial judge and the prosecutor were subjective in nature. If Thornburrow concluded that her acquaintance with the prosecutor would not affect her ability to be a fair juror, then the appropriate response to those questions was no response. Accordingly, the court of appeals held the trial court did not abuse its discretion by denying appellant's motion for new trial.

*II.*

■ The voir dire process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. *Jones,* supra. at 137; *De La Rosa v. State,* 414 S.W.2d 668 (Tex.Cr.App.1967). When a juror withholds material information in the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury. *Salazar v. State,* 562 S.W.2d 480, 482 (Tex.Cr.App. [Panel Op.] 1978). However, defense counsel has an obligation to ask questions calculated to bring out that information which might be

said to indicate a juror's inability to be impartial and truthful. *Jones,* supra. at 137. Unless defense counsel asks such questions, the material information which a juror fails to disclose is not really "withheld." *Id.*

In this instance, defense counsel did not ask the questions needed to elicit the desired information.[1] Given our holding in *Jones,* we cannot say the court of appeals erred to find that there was no juror misconduct.[2]

### III.

Appellant also argued on appeal that the trial court erred in denying his motion for

---

1. Appellant argues that defense counsel is entitled to rely on the questions asked by the court and prosecutor. This is correct. However, neither the court nor the prosecutor asked the jury panel the necessary question—did anyone know Wells. Appellant claims that the questions by the trial judge and the prosecutor were obviously attempting to elicit the information which venireperson Thornburrow withheld. However, a review of the entire voir dire supports the court of appeals' analysis.

First, before the panel was questioned regarding the prosecutors, the judge questioned them concerning the defendant and the victim. The judge first made some general observations:

"Now, there are certain basic things that we need to know going in, and one of them is whether or not you might be so well acquainted or even related to either the alleged victim or the defendant that it would preclude you from basing your verdict entirely on the evidence. Now, of course in a county like this we know a lot of people and there may be some of you that know the defendant or the alleged deceased. The mere fact that you may know them would not automatically disqualify you. It's a question of whether or not the acquaintance and the relationship is such that it would keep you from honing in on the evidence and basing your verdict entirely on the evidence. It might prejudice you, in other words."

Then the judge asked if anyone knew the defendant and if so to raise their hands. At this point the judge questioned those panel members individually. Some were excused, some were not. After that was finished, the judge asked if anyone knew the victim and if so to raise their hands. The judge then proceeded to question these panel members individually. However, when the judge questioned the panel members regarding the prosecutors (and subsequently, about the defense attorneys) the questioning procedure used by the judge was noticeably different. See p. 366, *ante.*

Second, the procedure used by the judge in questioning the panel on pretrial publicity was strikingly similar to the procedure used in questioning the panel regarding the prosecutors. Initially the trial judge asked whether any of the panel members had read or heard anything that might affect their ability to be fair and impartial:

"Now, it my [sic] be that some of you may have received some information about this case which might affect your verdict in the case, perhaps you have read something. I recall that it was written up in the newspaper. Of course, the mere fact that you read about the case in the paper wouldn't disqualify you, or heard something about it on the radio. The question is whether or not what you have heard or read you would regard as evidence and whether it might affect your verdict in the case. Is there anyone who would be affected by any publicity that the case has received?" No one in the panel responded. Later the prosecutor asked if anyone had read about the case in the newspaper, heard about it on the radio, or had any conversations about it. Numerous jurors responded affirmatively and the prosecutor then questioned them individually as to whether this would affect their ability to be fair. Thornburrow was one of these jurors.

2. The dissent faults us for failing to find *Von January v. State,* 576 S.W.2d 43 (Tex.Cr.App. 1978), controlling. Slip op. at 370. In *Von January* the defense attorney asked the jury panel if anyone *knew* the victim or the victim's family. Veniremember Dunn did not reveal that he knew the victim and his family. The jury panel here was not simply asked if they *knew* Tom Wells or if they *knew* any of the prosecutors in the County Attorney's Office. The panel was asked if they *knew any of them so well that it might affect their verdict. Von January* is distinguishable as it involved a direct and unambiguous question—do you know the victim?—whereas here the question required the veniremembers to determine whether any knowledge they had would affect their decision making—do you know anyone so well that it might affect your verdict? In *Von January* this Court stated that it was not the juror's function to decide whether his relationship to the subject of the question made him unacceptable. Here, however, that is essentially what the jurors were being asked to decide.

The dissent also argues that, regardless of the words used, the intent of the questions was "clear." The trial court's questions were "clearly" meant to determine whether any of the panel had friends in the County Attorney's Office. Even if this assumption by the dissent is accurate it would not alter the holding in this case. First, the role of the jury panel members is to answer the questions which they are asked, not to attempt to divine the intent of the questioner. *Von January,* 576 S.W.2d at 45. Second, what is "clear" to the dissent is not so obvious to everyone else. The questions did not have this "clear" meaning to venireperson Thornburrow, County Attorney Wells, the trial judge (who denied the motion for new trial), the court of appeals, or, now, a majority of this Court. Third, the dis-

new trial because the county attorney, Wells, did not disclose his relationship with Thornburrow. Although appellant included this allegation in his point of error regarding juror misconduct, appellant appeared to be making an independent claim of prosecutorial misconduct. Appellant claimed that the prosecutor had an affirmative duty to disclose this relationship to the defense and that this duty arose under the Disciplinary Rules of Professional Conduct, Rule 3.09, and under Article 2.01, V.A.C.C.P.[3] The court of appeals was not convinced that the prosecutor's conduct in this case was contrary to any disciplinary rule or to Article 2.01.[4] Furthermore, the court of appeals could find no authority for the proposition that a prosecutor has an affirmative duty to volunteer information that defense counsel could have easily obtained by questioning the panel. The court of appeals therefore concluded that the trial court did not abuse its discretion in denying appellant's motion for new trial.

■■■ This Court has previously held that the State has no obligation to furnish defense counsel with information on prospective jurors where the information was readily available to the defense on voir dire. *Linebarger v. State*, 469 S.W.2d 165, 167 (Tex.Cr.App. 1971); *Enriquez v. State*, 429 S.W.2d 141, 145 (Tex.Cr.App.1968); *Martin v. State*, 577 S.W.2d 490, 491 (Tex.Cr.App.1979); *Redd v.*

---

sent's contention that the intent of the questions was such that Thornburrow's responses constitute withholding information is contrary to this Court's holding in *Jones*, supra. In *Jones* the defense attorney asked the jury panel if anyone had *close* friends engaged in law enforcement. Venireperson Martinez did not reveal that she had previously been employed as a jail guard. This Court held that the venireperson did not withhold material information. "Clearly" defense counsel was interested in determining whether anyone on the panel was biased in favor of law enforcement; however he did not ask the questions which were necessary to bring out this information.

3. Appellant predicated his argument on the former Code of Professional Responsibility, Ethical Consideration 7.13. As the court of appeals noted, effective January 1, 1990, more than a year prior to the trial in this case, article 10 § 9 of the Disciplinary Rules of Professional Conduct was adopted and the former Code of Professional Responsibility was repealed.

Current Rule 3.09, Special Responsibilities of a Prosecutor, reads:
"The prosecutor in a criminal case shall:
(a) refrain from prosecuting or threatening to prosecute a charge that the prosecutor knows is not supported by probable cause;
(b) refrain from conducting or assisting in a custodial interrogation of an accused unless the prosecutor has made reasonable efforts to be assured that the accused has been advised of any right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;
(c) not initiate or encourage efforts to obtain from an unrepresented accused a waiver of important pre-trial or post-trial rights;
(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating infor-

mation known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; and
(e) exercise reasonable care to prevent persons employed or controlled by the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.07."
Comment 1, Rule 3.09, Source and Scope of Obligations, reads, in relevant part:
"1. A prosecutor has the responsibility to see that justice is done, and not simply to be an advocate. This responsibility carries with it a number of specific obligations.... [A] prosecutor is obliged to see that the defendant is accorded procedural justice, that the defendant's guilt is decided upon the basis of sufficient evidence, and that any sentence imposed is based on all unprivileged information known to the prosecutor. See paragraph (d)."
Vernon's Tex.Gov't Code Ann., Title 2, Subt. G, App. A, Art. 10 § 9 (1994).
Current Article 2.01, V.A.C.C.P., reads, in relevant part:
"It shall be the primary duty of all prosecuting attorneys, including special prosecutors, not to convict, but to see that justice is done."

4. The prosecutor testified, at the hearing on the motion for new trial, that he believed that Thornburrow had truly and accurately answered all questions posed to her and that she would be fair and impartial. He further testified he had considered striking Thornburrow because she was a liberal Democrat. Thornburrow testified that she had previously served as a juror in a criminal trial in which Wells was the prosecutor and that she had voted to acquit the defendant in that case.

Appellant does not argue, and the evidence would not support the argument, that Thornburrow was biased against appellant and that Wells kept their relationship a secret so that Thornburrow could get on the jury in order to help the State.

*State,* 578 S.W.2d 129, 131 (Tex.Cr.App.1979). The conclusion of the court of appeals is certainly consistent with these holdings. We cannot say the court of appeals erred to find that there was no prosecutorial misconduct.[5]

The court of appeals used the correct analysis in reviewing the trial court's denial of appellant's motion for new trial. See *Arcila v. State,* 834 S.W.2d 357, 361 (Tex.Cr.App. 1992). Accordingly, we affirm the judgment of the court of appeals.

BAIRD, Judge, dissenting.

Because the majority opinion sanctions both juror and prosecutorial misconduct by condoning the secreting of information necessary to a defendant's right to a fair trial, I dissent.

**I.**

The pertinent facts are as follows. During voir dire, the trial judge propounded the following question to the venire:

> Now, are there any of you who have any—well, I will say are so well acquainted with Mr. Wells [The County Attorney]—I know that most of you know him, he hopes that all of you know him—or with Mr. Ashmore in his office, or Mr. Chuck Superville, that's another assistant, or Mr. Scott McDowell? They are the prosecution staff. Are there any of you who are so well connected with them or acquainted or associated with them that it might affect your verdict? I take it there are none.

When no one responded, the trial judge continued: "Are there any of you who have any special connection with the prosecutor's office, perhaps a close friend in the office, secretary, investigator or the like?" Again, no one on the venire responded.

Later, at the conclusion of the State's voir dire, the County Attorney asked the following question:

> Sometimes we fail to ask a question that touches on your qualifications. My question to you at this time is there anything that any of you can think of that touches on your qualifications not in just any case but in this specific case that you think needs to be pointed out to me and Mr. Jackson and the court at this time? ... If so, would you raise your hand at this time and let's talk about it?

Although a number of veniremembers responded to this question, venirewoman Thornburrow did not. Relying on the candor of the veniremembers with the trial judge and the County Attorney, appellant did not again ask whether any veniremembers had relationships with the County Attorney or any members of his office. Thornburrow was ultimately seated on the jury and served as forewoman. The jury found appellant guilty of murder, Tex.Penal Code Ann. § 19.02(a)(1), and assessed punishment at life imprisonment. Tex.Penal Code Ann. § 12.32.

Appellant timely filed a motion for new trial alleging prosecutorial and juror misconduct as a result of the County Attorney's and Thornburrow's failure to divulge during voir dire that the County Attorney was a long-time friend of Thornburrow and her husband. Appellant submitted evidence showing the County Attorney had served as "best man" in Thornburrow's wedding and that Thornburrow's husband had served as "best man" in the County Attorney's wedding. In an amended motion for new trial, appellant submitted further evidence showing Thornburrow's husband had been the County Attorney's campaign treasurer and was currently serving as treasurer in the County Attorney's re-election campaign.

---

5. In any event, violations of disciplinary rules are to be dealt with by means of the administrative mechanisms set forth within those rules. See and cf. *Gentry v. State,* 770 S.W.2d 780, 791 (Tex.Cr.App.1988); *Henrich v. State,* 694 S.W.2d 341, 342 (Tex.Cr.App.1985); *Pannell v. State,* 666 S.W.2d 96, 98 (Tex.Cr.App.1984) (violation of a disciplinary rule is not grounds for exclusion of evidence under Article 38.23, V.A.C.C.P.). A violation of a disciplinary rule by the prosecutor, in and of itself, would not mandate a reversal of appellant's conviction.

If appellant believes that the county attorney violated the Disciplinary Rules of Professional Conduct (a matter about which we express no opinion), he is free to contact the State Bar.

In a hearing on appellant's motion for new trial, Thornburrow testified she and her husband had been friends with the County Attorney for more than twenty-five years. The County Attorney had served as "best man" in her wedding and her husband had served as "best man" in the County Attorney's wedding. She further stated that her husband served as the County Attorney's campaign treasurer in his first election campaign and was currently serving in that capacity in his re-election campaign. Thornburrow acknowledged that the County Attorney had a "close relationship" with her husband. When questioned about why she had not responded to the trial judge's question she explained that she felt her relationship with the County Attorney would not affect her ability to be impartial. She further explained that she believed the trial judge's second question did not pertain to the County Attorney, but only to the auxiliary staff. Although she acknowledged her relationship with the County Attorney was important information, she did not disclose that relationship because appellant's attorney did not ask the venire whether anyone specifically knew the County Attorney. With regard to the County Attorney's question, Thornburrow explained that she did not respond because she felt she had already answered the question by declining to respond to the trial judge's questions.

The County Attorney testified that he knew his relationship with Thornburrow was the type of information considered in deciding to exercise a peremptory challenge.[1] The County Attorney declined to inform appellant of his relationship with Thornburrow because he did not believe the relationship

1. During appellant's motion for new trial hearing, the following exchange occurred:

Defense Counsel: While the voir dire question was going on, did you or did you not recognized Marilyn Thornburrow as a person who you knew?
County Attorney: I did.
Q: And you knew during the voir dire examination the entire time the relationship that you had to Mrs. Thornburrow's husband, did you not?
A: I did.
Q: And the relationship that you had to Mrs. Thornburrow, you knew that, didn't you?
A: I knew that.
Q: Did you ever at any time make any of that information known to the defense attorney?
A: No, sir.
Q: As a matter of fact, when the case was over after the defense had filed a motion for new trial in the presence of some men out here you stated that the only reason I was mad is because [appellant] paid me a bunch of money and I had missed the ten dollar question?
The State: Your honor, we are going to object.
Defense Counsel: Did you make that statement?
The State: That has nothing to do with this hearing.
The Court: Sustain the objection.
Defense Counsel: Well, your honor, if I may—
The Court: You may not. The court has ruled. No argument.
Defense Counsel: Mr. Wells, you knew, did you not, the entire voir dire examination you knew, did you not, that the information about your relationship to Mrs. Thornburrow had never been made known to the court or the defense? You knew that, didn't you?
County Attorney: I knew that all the questions that had been asked as far as I was concerned had been answered correctly.

Q: Did you ever make it known to the defense that Robert Thornburrow was your campaign chairman?
A: No, sir.
Q: Or campaign treasurer?
A: No, sir.
Q: Did you ever make it known to the defense that you had served in the foreman of the jury's wedding as the best man?
A: No, sir.
Q: Did you ever make it known that her husband had served as best man in your wedding?
A: No, sir.
Q: You didn't feel as an officer of the court that was your responsibility to give that information?
A: No, sir.
Q: You did not? Okay. As a matter of fact, you felt the entire time [during voir dire] that the defense had just missed something, is that correct?
A: That's correct.
Q: And you felt it was to your advantage, did you not?
A: I thought that Marilyn Thornburrow would be a fair juror and *I had some questions in my mind as to whether or not I would take her on the jury. I weighed striking her just like you did and I didn't feel that I owed you any duty to do anything more than what I did.*
Q: But, Mr. Wells, you were privy to information in your assessment of Marilyn Thornburrow that the defense was not, weren't you?
A: You had the same opportunity as I did to review the jury panel.

would influence her deliberations in the instant case.

The trial judge denied appellant's motion for new trial.

## II.

The Sixth Amendment guarantees a trial before "an impartial jury." U.S. Const., amend VI. A defendant's right to a trial before an *impartial* jury is ingrained within our fundamental precepts of justice. *Irvin v. Dowd*, 366 U.S. 717, 721, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). *See also, In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process."). The voir dire process is designed to effectuate a defendant's right to a fair trial by insuring to the fullest extent possible, that the jury will be intelligent and impartial. *See, Salazar v. State*, 562 S.W.2d 480, 482 (Tex.Cr.App.1978); *and, De La Rosa v. State*, 414 S.W.2d 668, 671 (Tex.Cr.App.1967). An impartial jury favors neither the State nor the defendant; it is disinterested, equitable and able to follow the principles of the law. *Shaver v. State*, 162 Tex.Crim. 15, 280 S.W.2d 740, 742 (App.1955). Further, because the jury deliberates as a unit, the biases of even one of its members is sufficient to destroy its impartiality. *Salazar*, 562 S.W.2d at 482; *Shaver v. State*, 280 S.W.2d at 742; *and, Norwood v. State*, 123 Tex.Crim. 134, 58 S.W.2d 100, 101 (App. 1933). *See also, Petteway v. State*, 758 S.W.2d 861, 864 (Tex.App.—Houston [14th Dist.] 1988). Accordingly, the parties may question the venire during voir dire for possible bias. *See*, Tex.Code Crim.Proc.Ann. art. 35.16(a)(9).

### A.  Material Omission

A defendant is entitled to a reversal because a juror has withheld information if two criteria are met: (1) the omission is *material;* and, (2) the defendant has exercised due diligence in eliciting that information. *See, Jones v. State*, 596 S.W.2d 134, 137 (Tex.Cr. App.1980). Under these circumstances, a reversal is merited because withholding material information denies the defendant the opportunity to knowingly and intelligently exer-

cise his peremptory challenges, hence jeopardizing his right to a fair trial before an impartial jury. *Salazar*, 562 S.W.2d at 482. *See also, Petteway*, 758 S.W.2d at 865; *and, Fielder v. State*, 683 S.W.2d 565, 571 (Tex. App.—Fort Worth 1985). Material information includes information regarding a juror's relationship with any party in a criminal proceeding, *Von January v. State*, 576 S.W.2d 43, 45 (Tex.Cr.App.1978), including law enforcement authorities. *Bolt v. State*, 112 Tex.Crim. 267, 16 S.W.2d 235 (1929).

In *Bolt*, a bootlegging prosecution, a juror was asked during voir dire whether he had ever been involved in any manner in a prosecution for a violation of the state liquor laws. *Id.*, 16 S.W.2d at 235. Although the juror answered negatively, it was discovered after trial that the juror had previously assisted police "in raiding some parties who had been engaged in violating the liquor laws. One of the parties arrested had been placed in the custody of this juror, where he remained until he made bond." *Id.* We reversed the conviction, holding the juror's failure to disclose upon questioning that he had assisted the police in liquor raids was a material omission and deprived the defendant of the right make an effective peremptory challenge. *Id.*

### B.  Due Diligence

In addition to showing the information withheld was material, a defendant must show he exercised due diligence to solicit the information. *Jones*, 596 S.W.2d at 137. "When a partial, biased or prejudiced juror is selected without fault or lack of diligence on the part of defense counsel, who has acted in good faith upon the answers given to him on voir dire unaware that they are inaccurate, [or incomplete] good ground exists for a new trial." *Von January*, 576 S.W.2d at 45. *See also, Norwood*, 58 S.W.2d at 101. Although a defendant has the obligation to ask questions designed to bring out biases in the venire, *Jones*, 596 S.W.2d at 137, the majority nevertheless concedes that a defendant is entitled to rely upon a veniremember's response to questions by the trial judge and prosecution. Majority op. 897 S.W.2d at 364. *See also, Herrera v. State*, 665 S.W.2d 497,

502 (Tex.App.—Amarillo 1983, PDR ref'd); *and, Ruiz v. State,* 747 S.W.2d 535, 537 (Tex. App.—San Antonio 1988, PDR ref'd). A defendant must demonstrate his actions were in good faith and that he was unaware that a juror's responses were inaccurate or incomplete. *Von January,* 576 S.W.2d at 45; *and, Petteway,* 758 S.W.2d at 865. Consequently, when withheld information is material and does not result from a defendant's lack of due diligence in eliciting that information, a trial judge errs in failing to grant a new trial.

### C. The Instant Case

The majority does not dispute the information Thornburrow withheld concerning her relationship with the County Attorney was material, and so the only contention is whether appellant exercised due diligence in eliciting this information.

Appellant's reliance upon the responses by the venire to the questions propounded by the trial judge and the County Attorney was reasonable in light of the questions. "The purpose of the voir dire examination is to expose any bias or interest of the prospective jurors which might prevent full consideration of the evidence presented at trial. The term 'voir dire' literally means 'to speak the truth.'" *Price v. State,* 626 S.W.2d 833, 835 (Tex.App.—Corpus Christi 1981) (quoting *Black's Law Dictionary* 5th Ed.1979). The venire is bound by oath to truthfully respond the questions asked by the trial judge and

the parties. Tex.Code Crim.Proc.Ann. art. 35.02. In *Jones,* we explained:

> The voir dire examination is not an exercise to test the ability of defense counsel to joust with a prospective juror in an attempt to see what quantum of information he may or may not be withholding.[2]

*Id.,* 596 S.W.2d at 137.

Because a defendant is entitled to rely upon the candor of a veniremember's response to questions by the trial judge and prosecution, it is not reasonable to require a defendant to delve into areas where a veniremember has given a response which is neither suspicious nor questionable. To be certain, "[i]t is not lack of due diligence for an accused to believe what a prospective juror states. To require an accused to assume a prospective juror is untruthful and irritate the juror with accusing questions, would most certainly result in a prejudiced juror." *Ruiz,* 747 S.W.2d at 537. Consequently, a defendant should not be faulted for presuming candor on the part of the venire. *See, Jones,* 596 S.W.2d at 137.

The majority nevertheless maintains appellant could *not* rely upon the questions by the trial judge and the County Attorney because "... neither the court nor the prosecutor asked the jury panel the necessary question—*did anyone know Wells.*"[3] Majority op., 897 S.W.2d at 364, n. 1. However, the import of the trial judge's question is plainly evident:

**2.** All emphasis is supplied unless otherwise indicated.

**3.** Although not noted by the majority, the federal courts of appeals have held that information is not "withheld" by a juror unless he fails to honestly respond to a direct question on the matter by counsel or by the trial court. *See, Andrews v. Collins,* 21 F.3d 612, 619–620 n. 11 (5th Cir.1994) (written questions provided to juror did not require him to disclose that his deceased son-in-law had been employed by law enforcement agency); *Baca v. Sullivan,* 821 F.2d 1480, 1483 (10th Cir.1987) (juror, whose brother had been police officer in past, had no duty to respond to counsel's questions during voir dire whether any jurors had family or friends who were presently in law enforcement); *Burton v. Johnson,* 948 F.2d 1150, 1158–1159 (10th Cir. 1991) (spousal abuse victim's failure to disclose abuse in response to questions during voir dire

about veniremember's experience with spousal and child abuse warranted new trial); *and, United States v. Scott,* 854 F.2d 697 (5th Cir.1988) (where juror failed to respond to questions about relation in law enforcement that his brother was an officer in sheriff's department which investigated the offense, a new trial was warranted). Nevertheless, it is significant to note that the federal courts utilize a standard of review for determining jury misconduct from withheld information significantly different from our own. *See, McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). Under the federal standard, not only must a party show that a juror failed to honestly answer a material question, but must also show that the correct response would have rendered the juror subject to a challenge for cause. *Id.,* 464 U.S. at 556, 104 S.Ct. at 850.

Now, *are there any of you who have any—well, I will say are so well acquainted with Mr. Wells—I know that most of you know him, he hopes that all of you know him*—or with Mr. Ashmore in his office, or Mr. Chuck Superville, that's another assistant, or Mr. Scott McDowell? They are the prosecution staff. *Are there any of you who are so well connected with them or acquainted or associated with them that it might affect your verdict?* I take it there are none.

Are there any of you *who have any special connection with the prosecutor's office, perhaps a close friend in the office,* secretary, investigator or the like?

Clearly, the trial judge's question was meant to determine if any of the veniremembers personally knew *anyone* in the County Attorney's office, including the County Attorney. The County Attorney subsequently asked a follow up question inviting the jury to reveal any information which needed "to be pointed out." Thornburrow failed to respond to any of these questions.

It is apparent from Thornburrow's testimony during the motion for new trial hearing that she understood her relationship with the County Attorney to be important but did not disclose the relationship because no one asked her specifically whether she knew the County Attorney.

The Court of Appeals held the trial judge's question was open to a subjective interpretation and, therefore, Thornburrow did not withhold material information because *she did not believe* her relationship with the County Attorney would affect her ability to be impartial. *Armstrong v. State,* 850 S.W.2d 230, 233 (Tex.App.—Texarkana 1993). The majority finds no fault with this analysis. *See,* Majority op., 897 S.W.2d at 364–65.

The conclusion, however, that a Court may review a question during voir dire from the veniremember's subjective viewpoint runs directly counter to this Court's opinion in *Von January v. State,* 576 S.W.2d 43. In *Von January,* it was learned following trial that a juror withheld information of his long-standing relationship with the deceased's family despite questions to the venire concerning such relationships. The juror was a regular customer at a restaurant owned by the deceased's family, and would frequently associate with the deceased's father and grandfather when he patronized the establishment. *Id.,* at 44. In a hearing on the defendant's motion for new trial, the juror explained that

... although he knew and recognized the [deceased's family] he did not answer defense counsel's question because he did not have any close personal dealings with the family. *He believed that it was only this personal type of relationship that counsel was interested in when he propounded the question.*

*Id.,* at 45. Nonetheless, we explicitly rejected the juror's subjective interpretation of the meaning of counsel's question:

It was not [the juror's] function to second-guess defense counsel. *It was for defense counsel, and not the prospective juror, to decide whether the jurors relationship to the [complainant] made him unacceptable and subject to a peremptory challenge.*

*Id.,* at 45.

Although *Von January* clearly controls the present ground for review, the majority attempts to distinguish that case on the ground that the defense attorney in *Von January* asked the venire a direct question while the trial judge in the instant case asked a more general one. *Majority op.,* 897 S.W.2d at 364 n. 2. In the case before us, the trial judge and the County Attorney each propounded questions clearly designed to discover whether any veniremembers had friendships with members of the County Attorney's office. Although the majority contends the trial judge asked the venire only whether they knew any of the prosecutors so well that it might affect their verdict, *ibid,* the record is patently clear that the trial judge asked a second question regarding whether anyone had "any special connection with the prosecutor's office...." Thornburrow was a friend of the County Attorney. She did not possess the discretion to subjectively determine whether the questions posed to the venire "rang the bell" and required her to disclose that friendship. "Rather, juror [Thornburrow] consciously censored the information ... [and] ... believed that it was [her] place,

and not the place of the court or defense counsel, to determine whether [her] relations were a bar to jury service in this case." *United States v. Scott*, 854 F.2d 697, 699 (5th Cir.1988). Insofar as the majority passively accepts the Court of Appeals' conclusion that Thornburrow had such discretion, the majority seriously errs. *See, Von January*, 576 S.W.2d at 45.

In light of the foregoing, the majority's conclusion that appellant did not exercise due diligence in detecting Thornburrow's relationship with the County Attorney is erroneous. Despite questioning from both the trial judge and the County Attorney, Thornburrow withheld information of the relationship. Because appellant was entitled to rely on Thornburrow's silence, he had no reason to pursue that ground of inquiry. Consequently, the majority errs in holding his reliance on Thornburrow's silence constitutes a lack of diligence.

## III.

The majority further holds a prosecuting attorney has no affirmative duty to disclose his relationship with a veniremember because neither Rule 3.09 of the Texas Disciplinary Rules of Professional Conduct, nor Tex.Code Crim.Proc.Ann. art. 2.01, explicitly lists such an obligation.[4] Majority op., 897 S.W.2d at 365. Nevertheless, I believe the majority's narrow obeisance to the Disciplinary Rules entirely misses one Constitutional principle from which those rules were promulgated, namely, the obligation to disclose

information which is material to a defendant's trial. *See, Thomas v. State*, 841 S.W.2d 399, 404 (Tex.Cr.App.1992).

## A. Disclosure as Substantive Fairness

The State's withholding information which is favorable to the defendant violates the Due Process Clause of the Fourteenth Amendment because it conceals information which is necessary to effectively mount a defense against the charges brought against him. *See, Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215 (1963); *and, United States v. Agurs*, 427 U.S. 97, 103, 106–107, 96 S.Ct. 2392, 2397, 2399, 49 L.Ed.2d 342 (1976). *See also, Ex parte Castellano*, 863 S.W.2d 476, 481 (Tex.Cr.App. 1993); *Thomas*, 841 S.W.2d at 404; *and, Ex parte Adams*, 768 S.W.2d 281, 288 (Tex.Cr. App.1989). This principle is rooted in the concept of fairness: "Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1197. Accordingly, the State is prohibited from relying upon unfair methods, such as the suppression of material information, in order to obtain a conviction. *See, Id.*, 373 U.S. at 87–88, 83 S.Ct. at 1197, *and, Thomas*, 841 S.W.2d at 404. Further, a prosecutor is required to disclose information within his knowledge, but unknown to the defendant, independent from any request to do so. *United States v. Bagley*, 473 U.S. 667,

4. Texas Rules of Disciplinary Procedure, Rule 3.09 [Special Responsibilities of a Prosecutor] provides:

The prosecutor in a criminal case shall:
(a) refrain from prosecuting or threatening to prosecute a charge that the prosecutor knows is not supported by probable cause;
(b) refrain from conducting or assisting in a custodial interrogation of an accused unless the prosecutor has made reasonable efforts to be assured that the accused has been advised of any right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel;
(c) not initiate or encourage efforts to obtain from an unrepresented accused a waiver of important pre-trial, trial, or post-trial rights;
(d) make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused

or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal; and
(e) exercise reasonable care to prevent persons employed or controlled by the prosecutor in a criminal case from making an extrajudicial statement that the prosecutor would be prohibited from making under Rule 3.07.
Tex.Gov't Code Ann., tit. 2, subtit. G, App. A, Art. 10, § 9.
Further, Tex.Code Crim.Proc.Ann. art. 2.01 provides in pertinent part:
... It shall be the primary duty of all prosecuting attorneys, including any special prosecutors, not to convict, but to see that justice is done.

682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985); *and, Thomas,* 841 S.W.2d at 407.

### B. Affirmative Duty to Disclose Relationship

At least three appellate courts have recognized that an attorney has an affirmative duty to reveal a relationship between himself, or a member of his staff, and a prospective juror. *See, Implement Dealers Mutual Ins. Co. v. Castleberry,* 368 S.W.2d 249 (Tex. App.—Beaumont 1963); *Marshall Durbin, Inc. v. Tew,* 381 So.2d 152 (Miss.1980), *and, Jackson v. State,* 374 A.2d 1 (Del.Supr.1977). In *Castleberry,* a juror who had been represented by the plaintiff's attorney did not respond to the defendant's question whether any veniremembers had ever been represented by the plaintiff's attorney. *Id.,* 368 S.W.2d at 254. Upon completion of voir dire, as the parties reviewed their lists of jurors, the plaintiff's attorney discovered he had previously represented the juror. *Id.* He disclosed this relationship to the defendant, who had already submitted his list of challenges to the district clerk, and offered to disqualify the juror. Defendant refused the offer, but asked the trial judge for a mistrial, which was refused. On appeal, defendant contended a mistrial should have been granted because the juror's relationship with plaintiff's attorney rendered her subject to challenge. The Beaumont Court of Appeals held defendant was not entitled to a mistrial because he refused plaintiff's offer to disqualify the juror. The Court explained:

... It is important to determine whether or not the attorney-client relationship has existed between the attorneys and the jurors.... *In the instant case counsel for defendant was entitled to know the juror ... had been represented by [plaintiff's counsel].* However, *in this case the information came from the attorney, rather than the juror, as it does in many instances, and counsel for defendant knew of the relationship before the selection of the jury had been completed,* and the jury for this case sworn.

*Id.*

In *Marshall Durbin,* 381 So.2d 152, although a juror had been recently been repre-

sented by plaintiff's attorney, neither the juror nor plaintiff's attorney disclosed that relationship during voir dire. *Id.,* 381 So.2d at 154. The Mississippi Supreme Court reversed the judgment, stating:

The record in this cause being silent as to any valid reason why appellee's attorney failed to disclose that he had represented the juror approximately two weeks before the trial, leads to the inescapable conclusion that the defendant was prejudiced.

*Plaintiff's attorney, as an officer of the court, was under a duty to disclose his relationship with the juror,* and his failure to do so, under the facts presented, causes us to reverse this case.

*Id.,* 381 So.2d at 155.

Finally, in *Jackson,* 374 A.2d 1, a juror failed to disclose during voir dire that his nephew was a deputy prosecutor in the prosecutor's office. *Id.,* 374 A.2d at 2. Although the nephew did not prosecute the case, jury information cards used by the prosecutors' office noted the relationship. *Id.* Recognizing the nondisclosure of a relationship between a juror and an attorney hinders a defendant's intelligent exercise of peremptory challenges during voir dire, the Delaware Supreme Court reversed the conviction, stating:

Impartiality must be maintained, not only in the interest of fairness to the accused in the given case, but also to assure the integrity of the judicial process itself. Jury prejudice and bias, either actual or apparent, may not be allowed to derogate from society's confidence in its judicial system. Indeed, as was well stated nearly seven decades ago:

"Aside from protecting the rights of the parties, in the fair and impartial administration of justice, respect for the courts calls for their condemnation of any improper conduct, however slight, on the part of a juror, of a party, or of any other person calculated to influence the jury in returning a verdict. So delicate are the balances of weighing justice that what might seem trivial under some circumstances would turn the scales to its perversion. *Not only the evil, in such cases, but the appearances of evil, if*

*possible, should be avoided."* (Emphasis added.)

*George F. Craig & Co. v. Pierson,* 169 Ala. 548, 53 So. 803 (1910).

*Jackson,* 374 A.2d at 2–3. *See also, United States v. Nadaline,* 471 F.2d 340, 344 (5th Cir.1973) (although no harm shown in record, defense counsel should have disclosed that he and juror were acquaintances).

As the foregoing cases make clear, an attorney's duty as an officer of the court to disclose his relationship with a juror is not limited to those ethical obligations prescribed in state codes of professional conduct. The codes of professional conduct represent the minimum, not the maximum, of fair play demanded from the civil and criminal bar. *See,* Disciplinary Rules of Professional Conduct, Preamble, 11 ("The rules and Comments do not ... exhaust the moral and ethical considerations that should guide a lawyer...."). In the case of prosecuting attorneys, the obligation of fairness assumes a heightened importance, both because of the immediate effect that unfair conduct bears upon a defendant at trial, and because unfair conduct reduces society's confidence in the integrity of the criminal justice system as a whole. *See, Brady,* 373 U.S. at 87, 83 S.Ct. at 1197; *and, Jackson,* 374 A.2d at 2–3 (citing, *George F. Craig & Co. v. Pierson,* 169 Ala. 548, 53 So. 803 (1910)).

The Code of Criminal Procedure imposes a general duty of fairness on all parties participating in a criminal trial:

It is the duty of the trial court, the attorney representing the accused, [and] the attorney representing the State ... to so conduct themselves as to insure a fair trial for both the state and the defendant....

Tex.Code Crim.Proc.Ann. art. 2.03(b). In addition, however, the Legislature specifically sought to make clear that prosecuting attorneys have a special obligation as officers of the court:

... It shall be the primary duty of all prosecuting attorneys ... not to convict, *but to see that justice is done.*

Art. 2.01. Consequently, the majority errs in holding a prosecuting attorney's obligation to conduct himself in a fair manner is coterminous with the Disciplinary Rules. *See,* Majority op., 897 S.W.2d at 364–65.[5]

## C. The Instant Case

As previously noted, the County Attorney declined to inform appellant of his relationship with Thornburrow because he did not believe the relationship would influence her deliberations in the instant case. While the County Attorney may have believed in good faith that Thornburrow would be an impartial juror, we are not yet to the point in this State where the prosecution may substitute its judgment concerning peremptory challenges for that of the defense. The extent to which the relationship between Thornburrow and the County Attorney would influence Thornburrow's deliberations was a decision better left to appellant. By withholding information about that relationship, the County Attorney deprived appellant of the opportunity to make his own judgment regarding Thornburrow's impartiality, thereby depriving appellant of a fair trial.

## IV. Conclusion

Because the majority opinion sanctions juror and prosecutorial misconduct, namely the secreting of information necessary to the intelligent use of peremptory challenges, thereby denying appellant a fair trial, I dissent.

OVERSTREET, Judge, dissents with the following note:

I suppose one could play on words as the majority apparently approves of to the infringement of an accused right to fair trial; however I refuse to do so. The facts of the voir dire proceeding are not in dispute and

5. Of course, the majority is correct in noting that the State Bar is the appropriate forum in which to undertake disciplinary proceedings addressing the County Attorney's misconduct. However, such disciplinary action does not cure the error

in the instant case, namely the secreting of information necessary for appellant to make an intelligent use of his peremptory challenges, thereby denying him a fair trial.

**374**

well chronicled in the majority opinion and dissenting opinion.

The central issue in this case is whether the presiding juror and the elected prosecutor had a relationship that in all candor should have been disclosed to the defense. If there is a requirement to be candid and above board, the answer is yes. If trial by ambush is allowed and out of town lawyers can be hoodwinked, then sadly the answer is no.

Without question the conduct of the lawyer representing the accused would have been different if the relationship had been revealed. The record reflects that the juror would have been challenged for cause and failing success there, peremptorily struck.

The juror's explanation as to why she did not reveal the relationship is weak at best, the prosecutor's, because as an officer of the court has a greater responsibility, should be condemned.

With these comments I dissent to the majority and otherwise join the dissenting opinion.

MALONEY, J., joins Parts I and II of Judge BAIRD's dissenting opinion.