In The



Court of Appeals



Ninth District of Texas at Beaumont



 __________________ 


 

NO. 09-05-180 CR


______________________


 

JESSICA ANN MARKS, Appellant



V.



STATE OF TEXAS, Appellee






On Appeal from the 1A District Court


 Jasper County, Texas 


Trial Cause No. 9943 JD 






MEMORANDUM OPINION


 A jury convicted appellant Jessica Ann Marks of murder and assessed punishment at
twenty-five years confinement in the Texas Department of Criminal Justice-Institutional
Division and a $10,000.00 fine. See Tex. Pen. Code Ann. § 19.02(b)(2) (Vernon 2003). 
Marks' boyfriend got into a fight with Chris Daigle over money Marks' boyfriend owed
Daigle, and Marks fatally shot Daigle. Marks argues the trial court abused its discretion in
admitting into evidence videotaped statements. She also requests a new trial based on
claimed jury misconduct. We affirm the trial court's judgment. 

 Marks argues the trial court abused its discretion in admitting State's Exhibits 5, 6,
and 7, three videotaped interviews. Marks filed a motion to suppress the three videotaped
interviews because she claimed they did not strictly comply with article 38.22, section 3(a)(2)
of the Texas Code of Criminal Procedure. Section 3(a) provides the following:

 (a) No oral or sign language statement of an accused made as a result of
custodial interrogation shall be admissible against the accused in a criminal
proceeding unless:

 . . . 

 (2) prior to the statement but during the recording the accused is given
the warning in Subsection (a) of Section 2 above and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warning;

. . . .


Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon 2005). Subsection (a) of Section
2 requires a magistrate or the person to whom the statement is made to warn the accused that:

 (1) he has the right to remain silent and not make any statement at all and that
any statement he makes may be used against him at his trial; 

 (2) any statement he makes may be used as evidence against him in court;

 (3) he has the right to have a lawyer present to advise him prior to and during
any questioning; 

 (4) if he is unable to employ a lawyer, he has the right to have a lawyer
appointed to advise him prior to and during any questioning; and

 (5) he has the right to terminate the interview at any time[.]


Tex. Code Crim. Proc. Ann. art. 38.22, § 2(a) (Vernon 2005). Marks says the videotaped
interviews do not comply with article 38.22, section 3(a)(2), because State's Exhibit 5 lacks
the audio portion of Texas Ranger DannyYoung reading the warnings aloud, and Young's
reference to the rights given prior to that first interview in State's Exhibits 6 and 7 is
insufficient. Marks argues article 38.22 mandates strict compliance with the warning
requirements and "Young was required to include the statutory warnings on each and every
taped interview if these tapes were to be introduced as evidence."

 The trial court conducted a hearing on the matter. The court concluded Marks was
clearly advised of her rights concerning the making of the statement, she acknowledged so
verbally and in writing, and the purpose of article 38.22 had been satisfied. At trial, the court
also overruled Marks' objections to the admission of the videotaped interviews. 

 An appellate court reviews a trial court's ruling on a motion to suppress evidence
under a bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000). The reviewing court must give "'almost total deference to a trial court's
determination of historical facts.'" Id. (quoting Guzman v. State, 955 S.W.2d 85, 88-89 (Tex.
Crim. App. 1999)). The court's application of the law is reviewed de novo. See id. At the hearing on Marks' motion to suppress, Ranger Young testified he interviewed
Marks the evening of January 23, 2004, as evidenced by a videotaped recording of the
interview marked as State's Exhibit 5. Young explained that State's Exhibit 5 did not have
sound because after the interview it was discovered a dry erase board was sitting on one of
the cables that connected the microphone to the VCR and one of the cables had been pulled
out. While the court watched the video, the State questioned Young as to what was
transpiring during the interview since audio was not available: 

 [State's counsel]: I want you to watch your actions here and explain what's
happening. Do you know what's happening at this time?

 Young: Yes, sir. I believe at this time I'm reading Ms. Marks her
Miranda warning from a manila card. 

 [State's counsel]: Okay. The record reflects you are getting up, you're
walking towards the defendant in this case, you're sitting
down next to her. What are you doing there?

 Young: Right now I am ex-explaining to Ms. Marks on the back
of the card is her waiver of rights and I'm explaining
those to her; and then I will ask her if she'd sign the back
of the card, - 

 [State's counsel]: Okay.

 Young: -stating that she waived her right.

 [State's counsel]: Is that indeed what we now see happening, she is signing
the card?

 Young: Yes, sir, that's correct.

Young identified State's Exhibit 8 as the card that he read in giving Marks her Miranda
rights. The back of the card was signed by Young and Marks at 9:28 p.m. on January 23,
2004. Young testified that following the first interview, Marks provided a written statement. 
 The court then viewed State's Exhibit 6, a second videotaped interview of Marks that
began on January 24, 2004. Young testified that, at the beginning of the tape, Marks had
been booked for aggravated assault with a deadly weapon on a probable cause warrant. As
State's Exhibit 6 was played for the court, Young explained that the videotape depicted
Marks reading the Miranda warnings on the first page of her written statement. He testified
that during the second videotaped interview he did not orally read to Marks her Miranda
rights as he did the first time, but that he reminded her of her rights and then asked her
permission to continue questioning her. She agreed to the continued questioning. 

 Young identified State's Exhibit 7 as a recording of a third videotaped interview with
Marks that included audio and took place on January 24, 2004. The trial court viewed State's
Exhibit 7. Young testified he advised Marks of her rights by showing her the card and asking
her if she remembered the rights he had read to her previously and if she was still willing to
talk. Marks responded with an affirmative nod. 

 Even if the statute requires the warnings be read aloud, as Marks contends, Marks'
argument fails because the State substantially complied with the statute. See Stinnett v. State,
720 S.W.2d 663, 666 (Tex. App.--Amarillo 1986, no pet.) ("The purpose behind the warning
requirement of article 38.22 is to insure that the accused is advised of her constitutional rights
before making an oral confession. If the circumstances surrounding the recording of the
confession show that the purpose has been fulfilled, the recording should not be rendered
inadmissible because article 38.22, section 3(a)(2) has not been strictly followed."). Young
testified he gave Marks her Miranda warnings during the first interview, Marks signed the
manila card waiving her rights, read her rights on the first page of her written statement
before the second interview, and then acknowledged she remembered her rights in the second
and third interviews. Marks was advised of her rights. The purpose of article 38.22 was
satisfied. The trial court did not abuse its discretion in admitting the videotaped interviews. 
 Marks also argues she is entitled to a new trial pursuant to Rule 21.3(g) of the Texas
Rules of Appellate Procedure, because she says she did not receive a fair and impartial trial
due to juror misconduct. See Tex. R. App. P. 21.3(g). Marks filed a motion for new trial
asserting the jury foreman failed to disclose during voir dire that a personal relationship
existed between the victim's family and his family. Three affidavits were attached to the
motion. The first affidavit, signed by Marks, stated she was not aware at the time of jury
selection that a close relationship existed between Chris Daigle's family and the juror's 
family. The other two affiants stated it was common knowledge that the juror's son and the
victim's half-brother were friends; one of the affiants stated the juror knew the two were
friends. The trial court denied Marks' motion for new trial by operation of law. See Tex.
R. App. P. 21.8(c). 

 An appellate court applies an abuse of discretion standard to a trial court's denial of
a motion for new trial. Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). The
reviewing court must decide whether the trial court's decision was arbitrary or unreasonable. 
Id. The evidence is viewed in the light most favorable to the trial court's ruling, and all
reasonable findings of fact that could have been determined against the losing party are
presumed to have been found against that party. Id. A trial court abuses its discretion in
denying a motion for new trial when no reasonable view of the record could support the trial
court's ruling. Id. 

 During voir dire, the State informed the venire members of the names of Chris Daigle,
his parents and his girlfriend, as follows:

 [State's Counsel]: . . . You have heard the name Chris Wayne Daigle. Chris
Wayne Daigle is the son of Debra Darden and her
husband, Mr. Darden. Chris Wayne Daigle is -- was
boyfriend to [the girlfriend], and I believe testimony
shows she -- she was a lot more to him than just a
girlfriend. Those are some names, and I'm going to get
into other witnesses here in a minute. But those are some
names that are important for you to consider, again how
you know them and whether or not you feel like that
would prevent you from being a fair and impartial juror
in the case because they will -- well, obviously, Chris is
the victim, [the girlfriend] will be a witness in this case
as well as could the Daigle -- Chris' parents.


 On this side of the room, and it'll help speed things up if
I don't do it row by row, is there anyone that knows the
family, knows the victim, knows [the girlfriend] to the
point that you feel like you could not be a fair and
impartial juror in this case? By show of hands.


The defense then questioned the venire members regarding their familiarity with Chris
Daigle's family:

 [Defense Counsel]: Now, we've talked about Mrs. -- I think Mr.
Daigle's stepfather was a man named Bobby
Darden. Does anybody know Mr. Darden? 


The juror did not raise his hand in response to either question. No other questions as to
knowledge of the victim's family were asked.

 The Court of Criminal Appeals in Armstrong v. State addressed as follows the
"withholding" of material information by a juror and defense counsel's obligation in eliciting 
information during voir dire.

 The voir dire process is designed to insure, to the fullest extent possible, that
an intelligent, alert, disinterested, impartial, and truthful jury will perform the
duty assigned to it. When a juror withholds material information in the voir
dire process, the parties are denied the opportunity to exercise their challenges,
thus hampering their selection of a disinterested and impartial jury. However,
defense counsel has an obligation to ask questions calculated to bring out that
information which might be said to indicate a juror's inability to be impartial
and truthful. Unless defense counsel asks such questions, the material
information which a juror fails to disclose is not really "withheld." 


897 S.W.2d 361, 363-64 (Tex. Crim. App. 1995) (citations omitted). Appellant argues the
affidavits establish the juror engaged in such misconduct that as a result she did not receive
a fair and impartial trial. 

 The trial court may have rejected the affidavits as conclusory or speculative, or
concluded appellant failed to establish the trial was not fair and impartial. From the
affidavits, Marks did not establish the juror necessarily "withheld" material information. By
his silence in response to the prosecutor's voir dire question, the juror indicated he did not
know Daigle or his parents "to the point that [he] could not be a fair and impartial juror in
this case." Given the phrasing of the prosecutor's question, he may have felt he could be fair
and impartial even if he knew the Dardens. Defense counsel asked only about the stepfather,
Bobby Darden. Counsel must ask specific questions calculated to elicit information which
might indicate a juror's inability to be impartial. See Gonzales v. State, 3 S.W.3d 915, 917
(Tex. Crim. App. 1999). Because defense counsel did not ask whether the juror knew the
half-brother, the juror did not fail to disclose that information. See Armstrong, 897 S.W.2d
at 364. It is conceivable the juror did not know Daigle's stepfather personally, or simply did
not make the connection to his son's friend and to Daigle, whose last name was different
from his half-brother's. No hearing was held, however, and the juror did not testify. See
Tex. R. Evid. 606(b). Neither Bobby Darden nor Debra Darden testified at trial. Even if we
assume error, without knowing if or how well the juror knew Bobby or Debra Darden,
whether the error affected the deliberations or the verdict is not shown on this record. See
Gonzales, 3 S.W.3d at 917 n.2. ("A proper analysis under current law would address first
whether there is error, and if there is, whether the error resulted in harm . . . ."). Viewing the
evidence in the light most favorable to the trial court's ruling and presuming all reasonable
findings of fact that could have been made, appellant has not shown the trial court abused its
discretion in denying the motion for new trial. 

 Appellant's issues are overruled. The judgment is affirmed.

 AFFIRMED.


 ____________________________

 DAVID GAULTNEY

 Justice



Submitted on October 5, 2006

Opinion Delivered November 15, 2006

Do Not Publish 


Before McKeithen, C.J., Gaultney and Kreger, J.J.