

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## No. PD-0552-08

**MARK WILLIAM IVEY, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## IN CAUSE NO. 03-06-00683-CR FROM THE THIRD COURT OF APPEALS
## TRAVIS COUNTY

**HOLCOMB, J., filed a dissenting opinion, in which COCHRAN, J., joined**.

I respectfully dissent. In my view, what the trial court did in this case violated appellant's statutory right to have the jury assess his punishment and his constitutional right to due process of law. Accordingly, I would set aside the trial court's placement of appellant on community supervision and reinstate the jury's assessment of punishment.

Allow me to review the facts: In May 2005, an assistant county attorney in Travis County filed an information in the trial court charging appellant with misdemeanor driving while intoxicated.

In July 2006, appellant filed in the trial court his written election to have the jury assess his punishment in the event of his conviction. Appellant deliberately failed to file a sworn motion declaring that he had never been convicted of a felony, thus rendering himself ineligible for jury-recommended community supervision.[1]

In October 2006, appellant was tried before a jury and found guilty of driving while intoxicated. The jury, after hearing additional evidence at the punishment phase, assessed appellant's punishment at 35 days in jail and a fine of $2,000. The trial court, after reading the jury's assessment of punishment in open court, called a recess, during which the court met and spoke with the jurors in the jury room, apparently outside the presence of the prosecutor and the defense attorney. Immediately after that meeting, the trial court returned to the bench and announced that it was going to suspend imposition of the jury-assessed jail time and $1,500 of the jury-assessed fine, and place appellant on community supervision for two years.

Under the terms of the court-imposed community supervision, appellant was required to, among other things: (1) spend 30 days in jail; (2) pay a fine of $500; (3) pay an additional $60 per month in community supervision fees; (4) complete 60 hours of community service; (5) report to "counseling education services"; (6) install an "ignition interlock system" in his motor vehicle; (7)

---

[1] At the punishment stage of his trial, appellant took the witness stand and explained why he did not want community supervision:

Q: Now, why – aside from you stating that you don't think you have a problem with alcohol or drugs, why else did you not want probation [i.e., community supervision]?

A: Why else did I not want probation? At that time frame, I had job offers in other locations, in and out of this country, in which I did not have or want to have to stick around [in Travis County] or leave loose ends, and I honestly just wanted it to be over, out from behind me.

commit no offense – not even a traffic offense – against the laws of this state or any other state or of the United States; (8) "avoid injurious or vicious habits"; (9) drink no alcoholic beverages; (10) report to his community supervision officer once each month; (11) remain within Travis County unless permitted to leave by the trial court or his community supervision officer; and (12) "[s]ubmit a blood, breath, or urine specimen as requested by [the] Community Supervision Officer or any peace officer."

Those probation terms are, I believe, objectively much harsher than the jury-assessed punishment. True, appellant only has to serve 30 days in jail under the probation order, instead of 35 days under his jury-assessed punishment. However, the community supervision order is for 30 real days, while the 35 days under the jury sentence could have been reduced by good behavior. *See Ex Parte Cruthirds*, 712 S.W.2d 749, 752 (Tex.Crim.App. 1986). True, appellant must pay only $500, instead of $2,000, under the probation order, but he must pay an additional $60 each month for 24 months, which means he will pay a total of $1940.

The remarkable similarity between the jury-assessed punishment and the terms of confinement and pecuniary costs contained in the trial court's community supervision order should give this Court pause before declaring that community supervision "is not a sentence or even a part of a sentence." That may be true theoretically, but it does not appear to be the way the trial court saw matters.

In return for possibly spending five fewer days in jail and saving $60 (i.e., $2,000 minus $1,940),[2] for two years the defendant cannot leave the county without his community supervision

---

[2] Perhaps this savings is illusory. The defendant must pay to have an ignition interlock device installed in his car. *See* Tex. Code Crim. Proc. art. 42.12, § 13(i). The record does not reflect how much that will cost.

officer's permission and must completely abstain from alcohol, among other infringements on his liberties. If he is caught violating any of these numerous conditions, his community supervision can be revoked – at which point he will then be sentenced to his original 35 days in jail and must pay $1,500, in addition to whatever jail time he had already served and fine he had paid – or, perhaps worse from this defendant's perspective, his community supervision could be extended for another year.

The trial court judge took the jury's sentence and made it considerably harsher. The majority argues that this is not so because community supervision is not part of the sentence but is, rather, a suspension of sentence. For this proposition, the majority cites *Speth v. State*, 6 S.W.3d 530, 532 (Tex.Crim.App. 1999). *Speth*, though, understood probation as it has traditionally been understood, as a matter of clemency, a court lifting a more onerous sentence in exchange for the defendant agreeing to abide by certain conditions. Community supervision is "an extension of clemency that is contractual in nature." *Speth*, 6 S.W.3d at 533.

> When [community supervision] is granted, the trial court extends clemency and creates a relationship that is, in a way, contractual that is, the court agrees with the convict that clemency by way of probation will be extended if he will keep and perform certain requirements and conditions, the violation of which will authorize the revocation of the [community supervision]. *Ibid*. (Citations omitted.)

There is textual evidence that the legislature intended community supervision to be used as such. The statutory language at issue in this case states that "[a] judge, in the best interest of justice, the public, and the *defendant*, after conviction . . . may suspend the imposition of the sentence and place the defendant on community supervision." Tex. Code Crim. Proc. art. 42.12, § 3(a) (emphasis added). In three other places, Article 42.12 refers to the "best interest of . . . the defendant." *See id.* at §§ 5(a), (b); 23(a). In each instance, there is specific language vesting the trial court with the

authority to determine what the best interest of the defendant is. Here there is no such authority. Where the Legislature has omitted words, we should interpret that omission as intentional and meaningful. The omission of words vesting the power to determine the best interest of the defendant with the trial court should be read as allowing defendants here to determine their own best interests.

This reading makes sense considering that, as here, a broad reading of the trial court's authority would allow a judge to impose a harsher punishment than the jury did. That would be at odds with Texas' statutory authorization for a defendant to elect jury-assessed punishment and the traditional understanding that suspending sentence and granting community supervision is a matter of clemency. All of the explicit statutory restrictions on trial judges' power to suspend sentences deal with violent felonies or felonies that involve children, for which the Legislature disallowed judges showing leniency but retained the authority of juries to grant probation. *See* Tex. Code Crim. Proc. art. 42.12, § 3g. There are no explicit restrictions on trial judges imposing community supervision on other crimes.

In this case, appellant was charged with a Class B misdemeanor, the second lowest level of offense recognized by the Texas Penal Code. If the majority's reading of the statute is correct, there seems to be nothing in the way of those found guilty by a jury that assessed a minimum punishment but did not recommend probation, from having a trial court judge suspend their sentence and impose community supervision with terms similar to appellant's.[3] This is an absurd result, one that the Legislature could not have intended.

That anomalous result could be prevented by reading the statute to agree with the traditional

---

[3] Indeed, by suspending the jury-assessed punishment and imposing community supervision, the trial court could order that the defendant spend more time in jail than the jury assessed.

notion that a suspended sentence and community supervision is a form of clemency, not an additional punishment. As such, it should be meted out only to desirous defendants. The majority says that this would create "a right to avoid being placed on community supervision." More accurately, it should be seen as a waivable right to the sentence assessed by the jury. If there is no such right, then the right to have a jury assess punishment does not mean much.

I agree with the dissenting justice below. Appellant had the statutory right to have a jury assess a punishment within the range laid out by the Legislature. By imposing[4] a community supervision order that was harsher than the jury-assessed punishment, the trial court violated that statutory right as well as the fundamental notions of fair play and substantial justice that we associate with due process of law. *See Armstrong v. State*, 897 S.W.2d 361, 368 (Tex.Crim.App. 1995). By allowing this, this Court sets up a system where even the most minor misdemeanants, against their best interest, can find themselves with lengthy and onerous community supervision terms. This is not due process of law.

In addition, it appears quite likely that there was a cause-and-effect relationship between the trial court's improper *ex parte* meeting with the jurors and the court's decision to place appellant on community supervision. In my view, consistent with due process of law, we cannot countenance the placement of a defendant on community supervision when such placement apparently arose from improper *ex parte* contacts.

I respectfully dissent.

---

[4]The statutes and cases almost uniformly refer to courts "granting" a defendant community supervision. That word is inappropriate here.

FILED FEBRUARY 11, 2009

PUBLISH