

# IN THE
# TENTH COURT OF APPEALS

───────────

## No. 10-10-00285-CR
## No. 10-10-00286-CR
## No. 10-10-00287-CR
## No. 10-10-00288-CR
## No. 10-10-00289-CR

**LACEDRIC RAY,**

                                             **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                             **Appellee**

───────────

### From the 77th District Court
### Limestone County, Texas
### Trial Court Nos. 11343-A, 11344-A, 11345-A, 11346-A and 11630-A

───────────

## MEMORANDUM OPINION

───────────

A jury found Appellant Lacedric Ray guilty of aggravated assault with a deadly weapon in appellate cause numbers 10-10-00285-CR (trial court cause number 11343-A), 10-10-00286-CR (trial court cause number 11344-A), and 10-10-00287-CR (trial court cause number 11345-A); unlawful possession of a firearm by a felon in appellate cause number 10-10-00288-CR (trial court cause number 11346-A); and unlawfully carrying a

weapon on premises licensed for the sale of alcohol in appellate cause number 10-10-00289-CR (trial court cause number 11630-A). The jury assessed his punishment, enhanced by prior felony convictions, at thirty-five years' confinement for each offense, to run concurrently. Ray appeals his convictions. Because he asserts identical issues among the five appeals, we will decide them together.

**MOTION FOR NEW TRIAL HEARING**

In his first issue in each of his five appeals, Ray contends that the appeal should be abated to the trial court for a hearing on his motion for new trial. Ray argues that he is entitled to a hearing because his motions for new trial raise matters that are not determinable from the record. The State responds that Ray did not meet the presentment requirement of Rule of Appellate Procedure 21, and, therefore, the trial court did not abuse its discretion in not holding a hearing on the motions. In light of the State's argument, Ray contends alternatively that if his trial counsel failed to timely present the motions for new trial to the trial court, then his trial counsel was ineffective for failing to do so. The State responds that Ray's motions for new trial did not actually raise facts outside the record upon which error could be predicated; thus, even if his counsel had presented the motions to the trial court, a hearing was not required.

### A.   Presentment of Motion

The trial court is under no requirement to conduct a hearing on a motion for new trial if the motion is not timely presented. *See* TEX. R. APP. P. 21.6 ("The defendant must present the motion for new trial to the trial court within 10 days of filing it."); *Rozell v. State*, 176 S.W.3d 228, 230 (Tex. Crim. App. 2005). In *Carranza v. State*, 960 S.W.2d 76

(Tex. Crim. App. 1998), the Court of Criminal Appeals explained that presentment requires a defendant to go beyond simply filing the motion for new trial with the clerk of the trial court; "present" means "the record must show the movant for a new trial sustained the burden of actually delivering the motion for new trial to the trial court or otherwise bringing the motion to the attention or actual notice of the trial court." *Id.* at 79. The *Carranza* court said that its holding was "essentially the same holding as that set out in [a concurring] opinion" written by Judge Overstreet. *Id.* at 79-80. That opinion stated:

> In order to "present" a motion for new trial, the movant must give the trial court *actual* notice that it has timely filed a motion for new trial and request a hearing on the motion within ten days of filing it. The presentment must be directed to the trial court or another authorized to act on behalf of the trial court. The presentment must result in actual notice to the trial court and may be evidenced by the judge's signature or notation on a proposed order or by a hearing date set on the docket. This list is not meant to be exhaustive, but merely suggestive as to how one may fulfill the communication requirement for presenting a motion for new trial.

*Id.* at 81 (Overstreet, J., concurring).

Ray timely filed a motion for new trial in each cause, but the record does not contain any ruling on the motions, proposed orders containing the trial judge's signature or notation, or docket entries evidencing a hearing on the motions.[1] The only suggestion of presentment in the record of each cause is a "Certificate of Presentment" included at the end of each motion, stating, "By signature above, I hereby certify that a true and correct copy of the above and foregoing has been hand-delivered to the Office

---

[1] Ray's motions for new trial were denied by operation of law. *See* TEX. R. APP. P. 21.8.

for the 77th Judicial District Court of LIMESTONE County, on this day, February 2, 2009."[2] The only signature on each document, however, is that of Ray's attorney; the documents do not include any notation from the trial judge or other court personnel. And although the certificate states that the motion was "hand-delivered to the Office for the 77th Judicial District Court of LIMESTONE County," it does not indicate that counsel in fact communicated a request for a hearing to the trial court or another authorized to act on behalf of the trial court. Thus, we conclude that this evidence is insufficient to establish presentment. *See* TEX. R. APP. P. 21.6; *Bearnth v. State*, --- S.W.3d ---, ---, No. 01-09-00906-CR, 2011 WL 5110241, *10 (Tex. App.—Houston [1st Dist.] Oct. 27, 2011, no pet. h.) (holding that request for evidentiary hearing in prayer of motion for new trial and certificate of presentment signed only by defense counsel were insufficient to establish presentment); *Hiatt v. State*, 319 S.W.3d 115, 122-23 (Tex. App.—San Antonio 2010, pet. ref'd) (holding that certificate of presentment signed by defense counsel was insufficient evidence of presentment); *Burrus v. State*, 266 S.W.3d 107, 115 (Tex. App.—Fort Worth 2008, no pet.) (holding that certificate of presentment and docket entry noting filing of motion were insufficient to establish presentment). In the absence of a proper showing that Ray's motions for new trial were presented to the trial court, the trial court did not abuse its discretion in not conducting a hearing on Ray's motions for new trial. *See* TEX. R. APP. P. 21.6.

---

[2] The motions for new trial were each filed and served on March 2, 2009. In fact, the affidavit attached to the motions for new trial was not signed until March 2, 2009. We thus assume, as the State does, that the date in the "Certificate of Presentment" was in error and that everything occurred on March 2, 2009.

## B. Ineffective Assistance of Counsel

We must then address Ray's alternative argument that his trial counsel provided ineffective assistance by failing to timely present the motions for new trial to the trial court. To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews*, 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The purpose of a hearing on a motion for new trial is to (1) decide whether a cause should be retried and (2) prepare a record for presenting appellate issues if the motion is denied. *Smith v. State*, 286 S.W.3d 333, 338 (Tex. Crim. App. 2009). A hearing on a motion for new trial is not an absolute right and is not required when the matters raised in the motion are determinable from the record. *Id.* In addition, when a matter is not determinable from the record, no hearing is required unless the complaining party establishes the existence of "reasonable grounds" showing that he would be entitled to relief. *Id.* at 339. It is thus required, as a prerequisite to a hearing when the grounds in

the motion are based on matters not already in the record, that the motion be supported by an affidavit, either of the defendant or someone else, specifically setting out the factual basis for the claim. *Id.* The affidavit need not establish a *prima facie* case, but a fair reading of it must give rise to reasonable grounds in support of the claim. *Id.* Affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required. *Id.*

Here, Ray argues that he was entitled to a new trial hearing due to juror misconduct. In support of his motions, Ray attached the affidavit of his trial counsel, in which she states, "After the trial of this matter I discovered that juror Nikia Wiley was in fact closely related to victim Shanique [sic] Amos. Ms. Wiley failed to dislose [sic] this information during the voir dire process."

When a juror "'withholds material information during the voir dire process, the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury.'" *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004) (quoting *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. 1978)). To obtain a new trial based on juror misconduct, the defendant must show that the juror withheld material information during voir dire despite the defendant's due diligence. *Id.* at 355-56; *see Armstrong v. State*, 897 S.W.2d 361, 363-64 (Tex. Crim. App. 1995). Diligence requires that counsel ask questions calculated to bring out information that might indicate a juror's inability to be impartial and truthful. *Armstrong*, 897 S.W.2d at 363-64. Unless defense counsel asks such questions, material information that a juror fails to disclose is not really "withheld." *Id.* at 364. Counsel must ask specific

questions, not rely on broad ones, to satisfy this obligation and must ask follow-up questions after a potential bias is discovered. *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999).

During voir dire in this case, defense counsel did not inquire as to what kinship, if any, the venire members had with the alleged victims, Shenique Amos, Eric Washington, and their son.[3] The trial court and the State asked the venire members whether they *knew* Shenique Amos, Eric Washington, or their son. *See Armstrong*, 897 S.W.2d at 364 n.1 (defense counsel is entitled to rely on questions asked by court and prosecutor). Neither the trial court nor the State, however, asked the venire members if they were related in any way to the alleged victims.[4] If not asked the pertinent question, the potential juror could not have failed to disclose the information. *See id.* at 364. Therefore, Ray did not demonstrate reasonable grounds to support a new trial hearing. Moreover, because Ray did not demonstrate reasonable grounds to support a new trial hearing, he has failed to prove by a preponderance of the evidence that his defense was prejudiced by counsel's alleged deficient performance, and he cannot prevail on his ineffective assistance of counsel claims. We overrule Ray's first issue in all five appeals.

---

[3] The record is silent as to the reasons for defense counsel's decision to omit such inquiries. Thus, we presume that counsel's decision was reasonably professional and motivated by sound trial strategy. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

[4] The State did ask if the venire members knew, were kin to, or were friends *of Ray or his family*.

**SUFFICIENCY OF THE EVIDENCE**

In his second and third issues in cause numbers 10-10-00285-CR, 10-10-00286-CR, and 10-10-00287-CR, Ray contends that the evidence is legally and factually insufficient to support the jury's implicit rejection of his self-defense claim.

The Court of Criminal Appeals recently overruled *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996) and factual-sufficiency review. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). The court held that the *Jackson v. Virginia* legal-sufficiency standard is the only standard a reviewing court should apply in determining the sufficiency of the evidence. *Id.* Ray argues that we should disregard *Brooks* because it is a nonbinding plurality opinion that violates the Texas Constitution and statutory authority. However, the Court of Criminal Appeals has supported *Brooks*'s holding in subsequent majority opinions. *See, e.g., Lucio v. State*, 351 S.W.3d 878, 895 (Tex. Crim. App. 2011); *Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011). And as an intermediate court of appeals, we must adhere to principles of vertical stare decisis. We therefore decline this opportunity to depart from the dictates of *Brooks*, and because we cannot review the evidence for factual sufficiency, we overrule Ray's third issue in cause numbers 10-10-00285-CR, 10-10-00286-CR, and 10-10-00287-CR and will proceed to a sufficiency review for his second issues.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that

> evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio*, 351 S.W.3d at 894.

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Smith v. State*, 352 S.W.3d 55, 62 (Tex. App.—Fort Worth 2011, no pet.). After the defendant has

introduced some evidence of a defense, the State bears the burden of persuasion to disprove it. *Zuliani*, 97 S.W.3d at 594; *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991); *Smith*, 352 S.W.3d at 62. This burden does not require the State to produce evidence disproving the defense; it requires only that the State prove its case beyond a reasonable doubt. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 913; *Smith*, 352 S.W.3d at 62. To determine the legal sufficiency of the evidence to disprove self-defense, the appellate court asks whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt and also could have found against the appellant on the self-defense issue beyond a reasonable doubt. *Saxton*, 804 S.W.2d at 914; *Smith*, 352 S.W.3d at 62.

As limited by the indictments, a person commits the offense of aggravated assault with a deadly weapon if the person intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon during the commission of the assault. TEX. PEN. CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (West 2011). Self-defense is justified when a person "reasonably believes" that "force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PEN. CODE ANN. § 9.31(a) (West 2011). The use of deadly force is warranted only where "self-defense is justified under Section 9.31, a reasonable person would not have retreated, and when *deadly* force is reasonably necessary to protect against another's use or attempted use of *deadly* force." *Bumguardner v. State*, 963 S.W.2d 171, 173 (Tex. App.—Waco 1998, pet ref'd); *see* Act of May 16, 1995, 74th Leg., R.S., ch. 235, §

1, 1995 Tex. Gen. Laws 2141, 2141-42 (amended 2007) (current version at TEX. PEN. CODE ANN. § 9.32(a) (West 2011)).

On the evening of June 2, 2007, Ray, along with Brent Jackson, Gabriel Jackson, and at least two others, pulled into the parking lot of a gas station in Groesbeck. Shenique Amos, who had been behind Ray, drove by the gas station. Her boyfriend Eric Washington was in the passenger seat of the car, and their six-year-old son was lying down in the back seat. Once Amos passed the gas station, she "made the block," coming back to a stop sign by the station. Amos testified that her son said that he was hungry so she was going back to the Sonic to get him something to eat. Washington also initially testified that they were going to get their son something to eat but later stated that they came back because he was looking for a fistfight with Brent and Gabriel Jackson, whom he had had an earlier altercation with. As Amos approached the stop sign, Ray was handed a gun. Ray pointed the gun at Washington, Amos, and their son and fired three shots. Two bullets hit the car before Amos drove away. Amos called 9-1-1 and drove toward her mother's house even though the Groesbeck Police Department was just two blocks from the gas station. Shortly thereafter, Amos received a call asking them to come back to the gas station, and they did. Washington testified that he did not have a gun with him, and no weapon was found in the car.

Ray claimed in his recorded statement to the police that he was acting in self-defense because of the feuding in the days leading up to the incident. The first altercation happened two or three days before the shooting at the gas station.

Washington stated that he was visiting his mother-in-law's house when Ray's brother Isaac, who lived close by,

> thought I was trying to sell a -- a lady some weed and -- and after -- and he came out of the house and said, "Man, you can't sell no weed in front of my house, and all that. You can't be in front -- on my street." And it escalated from there and we started talking about each other's mamas and it escalated from there.

Isaac testified that Washington left for about forty-five minutes, and when he came back, they "had a few more words." Isaac stated that Washington said he was "going to put me where my mama at," and because his mother had died, that meant to him that Washington was going to bury him. According to several witnesses, Washington then fired at least one shot toward Isaac and those around him. Verri Pelton, a friend of Washington's, testified that Washington shot the gun and then left with Amos while she drove Washington's brown Suburban back to her house.

The evidence is contradictory as to how much of this altercation Ray witnessed. Ray's statement indicates that he witnessed most, if not all, of it. Ray said in his statement that he called 9-1-1 and reported that a shot had been fired and that the shooter was driving a brown SUV. Officer Mike Ferrell testified that he searched Washington's Suburban that night and that he did not find a weapon. Washington testified that it was a verbal altercation and that he did not own a gun at that time. Nevertheless, Rachonna Richardson, who works at a gas station in Mexia and knows Washington from his coming in the store, testified that toward the end of May 2007, Washington told her he had gotten "in a shoot out with them Ray boys in Groesbeck."

There was also testimony about an incident where Washington allegedly had a gun at the city park earlier on the day of the shooting at the gas station. Keandra Waters, who is acquainted with Ray and knows Washington, testified that she was standing by Ray in the park when Washington drove by them, let the window down halfway, pointed the gun out the window, and said, "You all don't want none of this." Ashley Tatum, who is acquainted with both Ray and Washington, also stated that she saw Washington waving a gun as he drove through the park that day. Officer Thomas Shoemaker responded to the report of Washington brandishing a gun at the city park. Officer Shoemaker located Washington approximately five to ten minutes after receiving the call. Washington admitted being at the park but denied having or displaying a gun. He said that Ray, Ray's brother Isaac, and Brent Jackson showed up at the park and started to harass him, so he left the park. Washington testified that the police actually searched him and his car and found no weapon. Officer Shoemaker testified that he did not search Washington but that he only questioned him.

Finally, Washington testified that earlier on the day of the shooting at the gas station, he was talking to a friend when Brent and Gabriel Jackson "came out of nowhere and tried to snatch me . . . out of my car and hit me in my mouth." He did not recall whether Ray was there. Ray indicated in his statement that he was there when his cousin hit Washington. Washington reported the incident to the police. Officer Ferrell testified that he spoke with Washington after the alleged assault. Washington told him that he thought either Brent or Gabriel Jackson had hit him. Officer Ferrell

could tell that Washington had been hit because "his upper lip was kind of pushed out a little bit."

After viewing all the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found the essential elements of aggravated assault with a deadly weapon beyond a reasonable doubt and also could have found against Ray on the self-defense issue beyond a reasonable doubt. Ultimately, the jury was the sole judge of the credibility of the witnesses and the weight to be given their testimony and was free to believe or disbelieve the evidence proffered by Ray regarding the issue of self-defense. We thus overrule Ray's second issue in cause numbers 10-10-00285-CR, 10-10-00286-CR, and 10-10-00287-CR.

## TRANSFERRED INTENT

In his fourth issue in cause numbers 10-10-00285-CR and 10-10-00286-CR, Ray contends that he was egregiously harmed by the trial court's failure to abstractly define transferred intent as it applies to self-defense in the jury charge and by its failure to apply the law of transferred intent as it applies to self-defense to the facts in the case. In other words, Ray argues that the trial court erred in omitting from the charges that he should be found not guilty of the aggravated assault of Amos and her son, respectively, if the jury believed that Ray was acting in necessary self-defense against *Washington*.

Because Ray did not object to the charge on this basis, error will not result in reversal of his conviction in the absence of "egregious harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final

arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

In cause number 10-10-00287-CR, Ray was charged with aggravated assault with a deadly weapon of Washington. The trial court instructed the jury on self-defense in the charge, and Ray makes no complaint about that charge. The jury found Ray guilty, implicitly rejecting Ray's self-defense claim. Thus, even assuming the trial court failed to properly instruct the jury on transferred intent as it applies to self-defense in cause numbers 10-10-00285-CR and 10-10-00286-CR, in which Amos and her son are the alleged victims, Ray could not have been egregiously harmed by the error.

We overrule Ray's fourth issue in cause numbers 10-10-00285-CR and 10-10-00286-CR.

### INEFFECTIVE ASSISTANCE/NECESSITY INSTRUCTION

In his second issue in cause numbers 10-10-00288-CR and 10-10-00289-CR, Ray contends that trial counsel was ineffective for failing to request a necessity instruction be included in the charge.

As stated above, to prevail on an ineffective assistance of counsel claim, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient

performance. *Wiggins,* 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews,* 159 S.W.3d at 101. The appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. *Id.* Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if Ray overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). To overcome the presumption of reasonably professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. When the record is silent regarding the reasons for counsel's conduct, a finding that counsel was ineffective would require impermissible speculation by the appellate court. *Gamble*, 916 S.W.2d at 93 (citing *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Therefore, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate an ineffective assistance claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007).

Here, the record is silent as to defense counsel's reasons for not requesting a necessity instruction be included in the charge. To conclude then that trial counsel was ineffective based on the asserted ground would call for speculation, which we will not do. *See Jackson*, 877 S.W.2d at 771; *Gamble*, 916 S.W.2d at 93. Thus, we must conclude that Ray has not overcome the presumption that counsel's decision was reasonably professional and motivated by sound trial strategy. *See Salinas*, 163 S.W.3d at 740; *Gamble*, 916 S.W.2d at 93.

Ray argues that *Vasquez v. State*, 830 S.W.2d 948 (Tex. Crim. App. 1992), requires that we determine that his counsel provided ineffective assistance. In *Vasquez*, the Court of Criminal Appeals concluded that the failure to request an instruction on necessity constituted ineffective assistance of counsel. *Id.* at 951. However, *Vasquez* is distinguishable from the current cases. First, *Vasquez* involved one offense, possession of a firearm by a felon, and necessity was the only defense available to the appellant. *Id.* Here, defense counsel was dealing with five separate offenses that had been consolidated into one trial. Furthermore, the record in this case is silent as to defense counsel's reasons for her actions and decisions while the record in *Vasquez* revealed that trial counsel failed to conduct any independent investigation into the facts; counsel had not fully researched the law regarding the offense, as evidenced by his total lack of awareness about which defenses, if any, were available to his client, and that he advised the trial court that his presentation of a defense came from appellant's research in *Corpus Juris*; and counsel, after trying unsuccessfully several times to present evidence regarding appellant's alleged kidnapping, failed to re-urge such evidence after the

State's attorney had "opened the door" to such evidence in cross-examination. *Id.* at 951 n.4.

We overrule Ray's second issue in cause numbers 10-10-00288-CR and 10-10-00289-CR.

## CONCLUSION

Having overruled all of Ray's issues in all five appeals, we affirm the trial court's judgment in each appeal.


REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed January 25, 2012
Do not publish
[CRPM]