**Opinion issued March 31, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00603-CR

———————————

## MICHAEL EDWIN HICKS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 235th District Court**
**Cooke County, Texas**
**Trial Court Case No. CR16-00449**

---

## O P I N I O N

A jury convicted appellant, Michael Edwin Hicks, of the third-degree felony

of Driving While Intoxicated—Third Offense,[1] and assessed his punishment at

---

[1]  *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (providing that driving while intoxicated is third-degree felony if person has previously been convicted two times of driving while intoxicated); *see id.* § 12.42(a) (providing for enhancement of

sixteen years' confinement and a $10,000 fine. In three issues, appellant contends that (1) the prosecutor committed misconduct and violated the Fifth Amendment and *Brady v. Maryland* by failing to disclose that a juror was the prosecutor's brother-in-law; (2) the prosecutor's withholding of this information violated the Michael Morton Act; and (3) the prosecutor's withholding of this information and the trial judge's failure to disclose that a different juror was her brother violated the Fifth and Sixth Amendment's guarantees of a fair and impartial jury and undermined confidence in the judicial proceedings.

We affirm.

## Background

On February 16, 2015, Texas Department of Public Safety Trooper M. Westervelt was on patrol and "running stationary radar" while parked along Interstate 35 in Cooke County, Texas.[2] At around 10:30 p.m., Westervelt encountered appellant, who was driving 92 miles-per-hour in a 75 miles-per-hour speed zone. Westervelt conducted a traffic stop, and, as he approached appellant's truck, he saw an open half-gallon bottle of vodka that was half full sitting on the

---

punishment for third-degree felony to punishment range for second-degree felony if defendant has prior felony conviction).

[2] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas to this Court pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE ANN. § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

backseat floorboard. Westervelt smelled the odor of alcohol while speaking with appellant and noticed that appellant had slurred speech and bloodshot eyes. When appellant denied the presence of an open bottle of alcohol in the truck, he became belligerent and Westervelt decided to conduct standardized field sobriety tests. Westervelt concluded that appellant was intoxicated, and he placed appellant under arrest for driving while intoxicated (DWI). Westervelt obtained a search warrant for a blood draw, and analysis of appellant's blood sample reflected a blood alcohol concentration of 0.19.

During voir dire, the trial judge introduced the parties, including the two prosecutors, appellant, and the two defense attorneys. The judge told the veniremembers: "Now, remember that you took an oath that you will tell the truth[,] so be truthful when the lawyers ask you questions and always give complete answers. If you do not answer a question that applies to you, that violates your oath." Later, the judge stated: "Also, you know, you've just heard the case called and you might think, well, I might know a little bit about that or about the attorneys." The judge reminded the veniremembers not to talk among themselves or to anyone else on any subject connected with the trial. The judge also stated:

> But if your beliefs are in conflict with the law in this case, or you think that you might have personal knowledge about this case or about the attorneys in this case or the parties in this case, then perhaps your service would be rather rendered in another case where those conflicts or that knowledge does not exist for you.

No veniremember volunteered that they were related to any participant in the case.

Near the end of the State's questioning, the prosecutor asked, "[D]o you have any questions before I sit down, because this will be the last time that I can talk to you?" Several veniremembers spoke up and mentioned that they had jobs related to law enforcement, and one veniremember stated that he had been a patrol officer in Cooke County and he probably knew the Trooper that the State planned to call as a witness. The trial judge instructed the prosecutor to say the name of the Trooper who would be testifying, and when the prosecutor identified Westervelt, the veniremember stated that Westervelt was a very close friend and the veniremember "would take his word" that his testimony was true. The prosecutor later said, "[Y]ou can know the trooper. All the judge is asking is that you can be fair and impartial to both sides."

Defense counsel began voir dire by asking if any of the veniremembers knew himself, his co-counsel, or appellant. One veniremember indicated that he had known defense counsel for several years in a "business, personal" capacity, and defense counsel asked if the veniremember could "set that aside and judge this trial fairly." The veniremember responded that he could do so. Later, another veniremember mentioned that she had seen appellant "around many times," and the trial judge instructed her not to "say any personal experience you've had with him." This veniremember stated that she could not put her past experience with appellant

4

aside and decide the case based solely on the evidence presented in the courtroom, and the trial court later granted the State's challenge for cause against this veniremember. During voir dire, no veniremember mentioned that he knew or was related to the prosecutor or the judge, and neither the State nor the defense counsel specifically asked if any veniremember knew or was related to the prosecutor or the judge.

Several veniremembers were challenged for cause. After the parties exercised their peremptory strikes and the jury was seated, the trial judge asked if either party had "any objections or exceptions to the qualifying, examining, striking or seating of the jury as a whole or any individual member thereof." Both the prosecutor and defense counsel stated that they had no objection, and neither challenged "the qualifications or selection of any of the jurors or of the jury as a whole."

The jury found appellant guilty of the offense of DWI—third offense and assessed his punishment at sixteen years' confinement and a $10,000 fine. Appellant filed a motion for new trial on the basis that the guilty verdict was obtained through juror misconduct. Specifically, appellant argued that "dishonest statements or omissions by one or more empaneled jurors impacting their eligibility as jurors" violated his Fifth and Sixth Amendment rights and his rights under the Texas Constitution.

Appellant also filed a motion seeking recusal of the trial judge. Appellant argued:

> Defendant has information and belief that the Presiding Judge Janelle Haverkamp has personal knowledge of disputed evidentiary facts concerning Defendant's pending motion for new trial. Defendant further has information and belief that the Presiding Judge Janelle Haverkamp is within the third degree of relationship of an individual who is likely to be a material witness in the upcoming motion for new trial hearing. Defendant's basis is set out below.

> Undersigned appellate counsel, Kyle Therrian, has conferred with trial counsel, Emmanuel Albarado and Jaime Gonzales regarding potential appealable matters. Trial counsel indicated they learned via a conversation between the presiding judge and prosecuting attorney that one of the presiding jurors was a sibling of the presiding judge. Both Mr. Albarado and Mr. Gonzales believe, to the best of their knowledge, that the jury panel was asked whether they knew any other person in the courtroom. To this inquiry trial counsel believes the panel provided either a negative or non-response, indicating there was no relation between members of the panel and any other person in the courtroom. Undersigned counsel believes this is a sufficient basis of fact to proceed with recusal.

Appellant argued that the juror's "denial of information to the defense denies the defense of the intelligent use of peremptory challenges" and that this right is the basis of his motion for new trial. The trial judge ultimately recused herself from ruling on appellant's motion for new trial, and a new judge was assigned to the case.

Defense counsel sought leave to amend his motion for new trial, arguing that, upon further investigation, he had learned that "the empaneled jury included one individual who is the brother of the presiding judge [who had recused herself from ruling on the motion for new trial] and another individual who is the brother-in-law

6

of the prosecuting attorney." He argued that, in addition to juror misconduct, the prosecutor improperly withheld his relationship with a juror who was "incapable or unfit to serve on the jury" pursuant to the Code of Criminal Procedure. He argued that the prosecutor's failure to disclose this information violated appellant's Fifth and Sixth Amendment rights, *Brady v. Maryland*, and the Michael Morton Act, which governs discovery in criminal cases in Texas. He argued "these two jurors should not have been seated, and Defendant was entitled to know about their relationships." Defense counsel filed an amended motion for new trial raising these arguments.

At the hearing on appellant's motion for new trial, the prosecutor did not testify but he stated: "[M]y brother-in-law was on the jury and the judge's brother was on the jury as well." The prosecutor signed a stipulation to that effect. Appellant's trial counsel testified at the hearing. Appellant's appellate counsel and trial counsel had the following exchange:

Q: [W]ere you made aware of that fact that the prosecutor's brother-in-law was sitting on the jury?

A: Yes, I was made aware of the fact. I don't know by who, but it was during the trial or shortly thereafter. I can't recall when it was.

Q: Okay. But it wasn't made aware—you weren't made aware of that fact during voir dire; is that fair?

A: Yes, I was not made aware during voir dire.

Q: And nobody on the defense team was either?

A: No, none of them were.

Q: Now, you brought something to my attention just before we walked in here this morning with regard to other individuals who the—that—or another individual who was familiar to you on the jury, who was that individual?

A: Well, there was two. One was a gentleman that I bank with, which was Van Knight. And then another one was a client that we were presently representing. I believe his name was Cody Schubert.

Q: Okay. Did you bring that information—did you make information available to the Court and to the prosecutor?

A: Yes, we did.[3]

Q: Okay. At that point did you get any sort of reciprocal courtesy?

A: A reciprocal courtesy in regards to—

Q: Who they might have known on the jury?

A: Oh, no.

Q: When were you made aware that the judge's brother sat on the jury?

A: I was made aware by my co-counsel after—I think after sentencing.

Q: Okay. So you weren't aware of this fact during the pendency of voir dire; is that fair to say?

A: Yes, I was not made aware during voir dire.

On cross-examination, trial counsel acknowledged that, during voir dire, he asked the venire whether anyone knew him or his co-counsel—and one person indicated

---

[3]    Although the appellate record reflects that trial counsel acknowledged that he had a "business, personal" relationship with veniremember Van Knight, the record contains no indication that trial counsel informed the prosecutor and the trial judge that one of his current clients was on the venire.

that he knew counsel, but counsel's alleged client did not speak up—but he did not ask whether anyone knew the prosecutor or the trial judge. Appellant did not call any other witnesses, such as the challenged jurors, at the hearing.

The newly-assigned trial judge denied appellant's motion for new trial. This appeal followed.

**Duty to Disclose Familial Relationship to Juror**

Appellant's three issues on appeal all arise out of the prosecutor's failure to disclose that one of the veniremembers—who ultimately served on the jury—was his brother-in-law and the trial judge's failure to disclose that another one of the veniremembers—who also served on the jury—was her brother. In his first issue, appellant argues that the prosecutor's failure to disclose his familial relationship to a juror violated the Fifth Amendment and *Brady v. Maryland*. In his second issue, he argues that the prosecutor's failure to disclose violated the Michael Morton Act, Code of Criminal Procedure article 39.14. And in his third issue, he contends that the trial judge's and the prosecutor's failures to disclose violated his Fifth and Sixth Amendment rights to an impartial jury and undermined public confidence in judicial proceedings.

## A. *Standard of Review and Governing Law*

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). We will

9

reverse only if no reasonable view of the record could support the trial court's ruling. *Id.* This deferential standard of review requires us to view the evidence in the light most favorable to the trial court's ruling. *Id.* In determining whether the trial court abused its discretion, we must not substitute our own judgment for that of the trial court, and we must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*; *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014) ("We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable.") (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)).

The Sixth Amendment guarantees the assistance of counsel and the right to a trial before an impartial jury. *Franklin v. State*, 138 S.W.3d 351, 354 (Tex. Crim. App. 2004); *Linnell v. State*, 935 S.W.3d 426, 428 (Tex. Crim. App. 1996); *see* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to have the Assistance of Counsel for his defence."). Part of this constitutional guarantee includes "adequate voir dire to identify unqualified jurors." *Franklin*, 138 S.W.3d at 354 (citing *Morgan v. Illinois*, 504 U.S. 719, 729 (1992)). The Court of Criminal Appeals has also "consistently held that essential to the Sixth Amendment guarantees of the assistance of counsel and trial before an impartial jury 'is the right to question veniremembers in order to

10

intelligently exercise peremptory challenges and challenges for cause.'" *Id.* (quoting

*Raby v. State*, 970 S.W.2d 1, 10 (Tex. Crim. App. 1998) (Baird, J., concurring and

dissenting)). "The voir dire process is designed to insure, to the fullest extent

possible, that an intelligent, alert, disinterested, impartial, and truthful jury will

perform the duty assigned to it." *Armstrong v. State*, 897 S.W.2d 361, 363 (Tex.

Crim. App. 1995) (per curiam).

Code of Criminal Procedure article 35.16 addresses challenges for cause made

during voir dire. It provides:

(a)     A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury. A challenge for cause may be made by either the state or the defense for any one of the following reasons:

1.      That the juror is not a qualified voter in the state and county under the Constitution and laws of the state; provided, however, the failure to register to vote shall not be a disqualification;

2.      That the juror has been convicted of misdemeanor theft or a felony;

3.      That the juror is under indictment or other legal accusation for misdemeanor theft or a felony;

4.      That the juror is insane;

5.      That the juror has such defect in the organs of feeling or hearing, or such bodily or mental defect or disease as to render the juror unfit for jury service, or that the juror is legally blind and the court in its discretion is not satisfied that the juror is fit for jury service in that particular case;

6.      That the juror is a witness in the case;

7.  That the juror served on the grand jury which found the indictment;

8.  That the juror served on a petit jury in a former trial of the same case;

9.  That the juror has a bias or prejudice in favor of or against the defendant;

10. That from hearsay, or otherwise, there is established in the mind of the juror such a conclusion as to the guilt or innocence of the defendant as would influence the juror in finding a verdict. . . . ;

11. That the juror cannot read or write.

No juror shall be impaneled when it appears that the juror is subject to the second, third or fourth grounds of challenge for cause set forth above, although both parties may consent. All other grounds for challenge may be waived by the party or parties in whose favor such grounds of challenge exist.

TEX. CODE CRIM. PROC. ANN. art. 35.16(a); *see id.* art. 35.19 ("No juror shall be impaneled when it appears that he is subject to the second, third or fourth cause of challenge in Article 35.16, though both parties may consent.").

Article 35.16(b) sets out three situations in which the State may make a challenge for cause, and article 35.16(c) sets out two situations in which the defense may make a challenge for cause. *Id.* art. 35.16(b)–(c). One challenge for cause that the defendant may make is that the juror "is related within the third degree of consanguinity or affinity, as determined under Chapter 573, Government Code, to the person injured by the commission of the offense, or to any prosecutor in the case." *Id.* art. 35.16(c); *see* TEX. GOV'T CODE ANN. § 573.023(c)(2) (providing that individual's brother is within second degree of consanguinity); *id.* § 573.024(a)(2)

12

(providing that two individuals are related by affinity if spouse of one individual is related by consanguinity to other individual); *id.* § 573.025(b) (providing that individual's relatives within third degree by affinity include "anyone related by consanguinity to the individual's spouse in one of the ways named in Section 573.023(c)"). The Code of Criminal Procedure does not include a similar provision concerning challenges for cause of prospective jurors who are family members of the trial judge.

With the exception of the second, third, and fourth challenges for cause listed in article 35.16—that the prospective juror has been convicted of misdemeanor theft or a felony; the prospective juror is under indictment or other accusation for misdemeanor theft or a felony; and the prospective juror is insane—the remaining challenges for cause are not absolute disqualifications. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (addressing article 35.16(a)(7), concerning prospective juror's service on grand jury that returned indictment against defendant); *Vera v. State*, 496 S.W.3d 293, 295 (Tex. App.—San Antonio 2016, pet. ref'd) ("With the exception of three specific grounds for disqualification, the disqualification grounds listed in article 35.16 may be waived."); *see also* TEX. CODE CRIM. PROC. ANN. art. 35.19 (entitled "absolute disqualification" and providing that, even if parties agree, prospective juror may not be impaneled if subject to second, third, or fourth challenges listed in article 35.16). "All grounds for challenge for

cause may be forfeited," and a challenge for cause "is forfeited if not made." *Webb*, 232 S.W.3d at 112. A party's failure to question the prospective jurors on that subject "constitutes a forfeiture of the right to complain thereafter." *Id.*; *Ex parte Perez*, 525 S.W.3d 325, 339 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (stating that "challenge to a juror based on a non-absolute disqualification, such as county residence, is a forfeitable right, not a waivable right" and all party has to do forfeit such challenge is "remain silent"); *Vera*, 496 S.W.3d at 295 ("[W]ith three exceptions not applicable here, the failure to make a timely objection to a juror's qualifications under article 35.16 waives the right to challenge those qualifications.").

The constitutional right to an impartial jury "includes adequate voir dire to identify unqualified jurors." *Franklin*, 138 S.W.3d at 354; *Armstrong*, 897 S.W.2d at 363 ("The voir dire process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it."). In situations in which a juror withholds material information during voir dire, "the parties are denied the opportunity to exercise their challenges, thus hampering their selection of a disinterested and impartial jury." *Franklin*, 138 S.W.3d at 354 (quoting *Salazar v. State*, 562 S.W.2d 480, 482 (Tex. Crim. App. 1978)); *Armstrong*, 897 S.W.2d at 363. "[I]t is not necessary that the concealed information show actual bias; just that it has a tendency to show bias." *Franklin*, 138

14

S.W.3d at 356; *Barnett v. State*, 420 S.W.3d 188, 192 (Tex. App.—Amarillo 2013, no pet.) ("To be material, the information withheld must be of a type suggesting potential for bias or prejudice.").

The Court of Criminal Appeals has also held, however, that defense counsel "has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial and truthful." *Armstrong*, 897 S.W.2d at 363–64; *Canada v. State*, 547 S.W.3d 4, 25 (Tex. App.—Austin 2017, no pet.); *see Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999) (stating that counsel must "ask *specific* questions, not rely on broad ones, to satisfy this obligation" and that counsel must ask follow-up questions after discovering potential bias); *Ashton v. State*, 526 S.W.3d 490, 497 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("[D]efense counsel bears the burden to ask questions to determine a juror's potential bias."). The Court of Criminal Appeals has stated:

> It is incumbent upon counsel to specifically ask questions which will determine whether they have a right to challenge the veniremember. The jury panel does not know the statutory challenges for cause and thus the prospective jurors likely do not know what the parties are trying to determine during voir dire. It is counsel's responsibility to ask questions specific enough to elicit the answers they require.

*Webb*, 232 S.W.3d at 113.

If defense counsel does not ask such questions, "the material information which a juror fails to disclose is not really 'withheld.'" *Armstrong*, 897 S.W.2d at 364; *see Franklin*, 138 S.W.3d at 355–56 ("Under Texas law, the defendant must

15

show that the juror withheld material information during voir dire, and the information is withheld *despite due diligence exercised by the defendant*.") (emphasis added); *Gonzales*, 3 S.W.3d at 916–17 (noting that error occurs where "a prejudiced or biased juror is selected *without fault or lack of diligence on the part of defense counsel*, such counsel acting in good faith on the juror's responses and having no knowledge of their inaccuracy"); *White v. State*, 181 S.W.3d 514, 518 (Tex. App.—Texarkana 2005) (considering whether defense counsel "used due diligence in eliciting the withheld information omitted by the juror or jurors during voir dire"), *aff'd*, 225 S.W.3d 571 (Tex. Crim. App. 2007).

There is a "necessity" that defense counsel "ask during voir dire all of the relevant statutory questions to determine whether a juror may be disqualified." *Webb*, 232 S.W.3d at 113; *Stillwell v. State*, 466 S.W.3d 908, 913 (Tex. App.—Fort Worth 2015, no pet.) (stating that attorneys have duty "to determine capability or fitness of the jurors during voir dire"). During voir dire, counsel should specifically cover all of the grounds for challenges for cause listed in article 35.16 before counsel "could be held to have used due diligence in determining the applicable challenges for cause." *Webb*, 232 S.W.3d at 113–14; *Ashton*, 526 S.W.3d at 497 ("Defense counsel must also ask specific questions, and cannot rely on broad ones, to satisfy this due diligence obligation.").

16

## B.      *Analysis*

### 1.      **Violation of Fifth and Sixth Amendments**

In his first and third issues, appellant argues that the prosecutor's failure to disclose that his brother-in-law was a prospective juror violates his due process rights under the Fifth Amendment. In his third issue, he argues that this failure by the prosecutor and the trial judge's failure to disclose that her brother was a prospective juror undermined public confidence in judicial proceedings and violated his due process rights and his Sixth Amendment right to a fair and impartial jury.

During voir dire in this case, defense counsel asked the venire if anyone knew himself, his co-counsel, or appellant. One venireperson raised his hand and stated that he knew defense counsel in a "business, personal" capacity and that they had known each other for several years. Defense counsel asked if the venireperson could "set that aside and judge this trial fairly," and the venireperson responded that he could. Later, defense counsel asked, "Does anyone's gut tell you right now, this guy [appellant], he's guilty?" A venireperson responded yes, and defense counsel asked whether that feeling was because appellant had prior DWI convictions. The venireperson responded, "Well, that and, you know, several years ago, like in a bar, out on a date, I guess you could call it, I've seen him around many times." The trial judge instructed the venireperson not to say any personal experiences that she had had with appellant and asked whether the venireperson could "put that aside and

17

judge this case only on what's presented to you in the courtroom?" This venireperson responded that she could not, and the trial judge granted a challenge for cause against this venireperson. Defense counsel did not ask if any of the prospective jurors knew or were related to either of the prosecutors or to the trial judge. Similarly, neither the prosecutor nor the trial judge asked these questions.

Defense counsel asked the venire whether anyone knew the defendant and either of the defense attorneys, but no one involved in conducting voir dire—the trial judge, the prosecutor, or defense counsel—asked whether anyone knew or was related to the prosecutor or the judge. Under article 35.16(c), defense counsel may make a challenge for cause on the basis that a venireperson is "related within the third degree of consanguinity or affinity . . . to any prosecutor in the case." TEX. CODE CRIM. PROC. ANN. art. 35.16(c). This potential challenge for cause is not, however, one of the three challenges that are considered "absolute disqualifications" under the Code of Criminal Procedure. *See id.* ("No juror shall be impaneled when it appears that the juror is subject to the second, third or fourth grounds of challenge for cause, set forth above, although both parties may consent."); *id.* art. 35.19 (stating same). Article 35.16 expressly states that "[a]ll other grounds for challenge may be waived by the party or parties in whose favor such grounds of challenge exist." *Id.* art. 35.16(a); *Webb*, 232 S.W.3d at 112.

The Court of Criminal Appeals and the intermediate appellate courts have repeatedly held that defense counsel has an obligation to ask specific questions of the venire to determine whether counsel has a right to challenge a prospective juror for cause. *Webb*, 232 S.W.3d at 112–13; *Gonzales*, 3 S.W.3d at 917; *Armstrong*, 897 S.W.2d at 363–64; *Canada*, 547 S.W.3d at 25; *Ashton*, 526 S.W.3d at 497; *Stillwell*, 466 S.W.3d at 913. Counsel should ask "all of the relevant statutory questions [under article 35.16] to determine whether a juror may be disqualified." *Webb*, 232 S.W.3d at 113. If counsel does not ask these questions, "the material information which a juror fails to disclose is not really 'withheld.'" *Armstrong*, 897 S.W.2d at 364; *Ashton*, 526 S.W.3d at 497; *see Gonzales*, 3 S.W.3d at 917 ("We have consistently held there is no error where counsel has not met that obligation."). Challenges for cause may be forfeited, and "[f]ailure to question the jurors on that subject constitutes a forfeiture of the right to complain thereafter." *Webb*, 232 S.W.3d at 112.

Here, although defense counsel asked the venire if anyone knew himself, his co-counsel, or appellant, he did not ask whether anyone knew or was related to either of the prosecutors or the trial judge. This information—relevant to a permissible statutory challenge for cause—was readily obtainable during voir dire, but defense counsel never asked questions designed to elicit this information. Because defense counsel did not ask whether anyone knew or was related to the prosecutors or the

trial judge, the two jurors challenged in appellant's motion for new trial and on appeal did not withhold material information during voir dire. *See Armstrong*, 897 S.W.2d at 363–64; *Ashton*, 526 S.W.3d at 498 (holding, when defense counsel asked whether prospective jurors had close family member involved with law enforcement but did not ask whether prospective jurors had non-familial relationships with law enforcement officers, counsel "did not ask questions that were calculated to uncover the jurors' non-familial relationships with" detective, and two prospective jurors did not withhold information during voir dire); *see also Webb*, 232 S.W.3d at 113 ("It is counsel's responsibility to ask questions specific enough to elicit the answers they require."). Because defense counsel did not ask the venire whether anyone knew or was related to the prosecutors and the trial judge, counsel forfeited that challenge for cause. *See Webb*, 232 S.W.3d at 112.

Appellant—although not citing or discussing *Webb*, *Armstrong*, or any other case addressing defense counsel's obligation to ask questions during voir dire designed to elicit information relevant to challenges for cause—argues that close relatives of the prosecutor have been statutorily determined to be "incapable or unfit to serve on the jury" and that the harm from the prosecutor's failure to disclose that his brother-in-law was on the venire "is built-in, *per se*, or automatic when the prosecutor's undisclosed relationship is familial and within the third degree of affinity or consanguinity."

20

Appellant correctly states that article 35.16(a) begins by providing that "[a] challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury" and that article 35.16(c) provides that a defendant may challenge a prospective juror for cause when that person is related within the third degree of consanguinity or affinity to a prosecutor in the case. TEX. CODE CRIM. PROC. ANN. art. 35.16(a), (c). However, appellant fails to recognize that, with the exception of three challenges for cause not applicable in this case, all other grounds for challenges for cause, including those listed in article 35.16(c), "may be waived by the party or parties in whose favor such grounds of challenge exist."[4] *Id.* art. 35.16(a); *Webb*, 232 S.W.3d at 112. The Legislature provided that a person related within the third degree of consanguinity or affinity to a prosecutor in the case is subject to a challenge for cause, but the Legislature also provided that this challenge for cause is one that can be forfeited.

The concern that appellant raises regarding close relatives of the prosecutor and the trial judge serving on the jury is a valid one, and we do not condone the silence of the prosecutor or the judge in this case. The better practice is for trial

---

[4]      We note, as the State points out, that even if an "absolutely disqualified" juror serves on a jury, reversal of the conviction on appeal is not automatic unless the defendant "raises the disqualification before the verdict is entered." TEX. CODE CRIM. PROC. ANN. art. 44.46. If the disqualification was not discovered or brought to the trial court's attention until after the verdict was entered, the defendant must make "a showing of significant harm by the service of the disqualified juror" to obtain a reversal of his conviction. *Id.*

21

judges, prosecutors, and defense attorneys to be open and candid about the presence of their close relatives on the venire. However, we cannot ignore binding Court of Criminal Appeals precedent holding that defense counsel has an obligation during voir dire to ask questions of the prospective jurors designed to elicit information relevant to the challenges for cause. *See, e.g.*, *Webb*, 232 S.W.3d at 112–13; *Gonzales*, 3 S.W.3d at 917; *Armstrong*, 897 S.W.2d at 363–64. The Court of Criminal Appeals has stated that "the Sixth Amendment right to an impartial jury is just that—a right," and "like any other right," this right "is subject to waiver (or even forfeiture) by the defendant in the interest of overall trial strategy." *State v. Morales*, 253 S.W.3d 686, 697 (Tex. Crim. App. 2008); *Delrio v. State*, 840 S.W.2d 443, 445–46 (Tex. Crim. App. 1992) (noting that Court of Criminal Appeals has not held "that an impartial jury is an inflexible constitutional imperative which cannot be procedurally defaulted or consciously waived" and stating that right to impartial jury is "a right of the accused, which must be pressed in some fashion at trial before reversal of his conviction may be predicated upon its breach" and that court has "no reason to believe that the right to an impartial jury is not subject to ordinary adversarial principles, to be invoked, or not, according to the vicissitudes of trial"); *see also Trinidad v. State*, 312 S.W.3d 23, 29 n.27 (Tex. Crim. App. 2010) (stating that in *Morales*, court "observed that the right to trial by an impartial jury is subject to forfeiture"); *Aguilar v. State*, 547 S.W.3d 254, 259 (Tex. App.—San Antonio

2017, no pet.) (quoting *Morales* and stating that defendant "mistakenly argues . . . that the right to an impartial jury cannot be waived by a defendant").

Defense counsel in this case did not ask questions relevant to determining whether any prospective juror knew or was related to the prosecutor or the trial judge. There is no indication in the record that defense counsel was somehow prevented from asking these questions to the venire.[5] We conclude that appellant forfeited this challenge for cause.[6] *See Webb*, 232 S.W.3d at 112.

---

[5]  Appellant argues that he was "denied essential information by which he could have intelligently question[ed] jurors, develop[ed] the record, and exercise[d] peremptory jury strikes and challenges." As stated above, there is no indication in the record that defense counsel sought to question the venire about their relationships— familial or otherwise—with the prosecutors or the trial judge but was prevented from doing so. The State lodged four objections during defense counsel's voir dire, three of which were sustained. On three occasions, the State objected on the basis that defense counsel had asked an improper commitment question, and on the fourth occasion, the State made a relevance objection. Defense counsel's challenged questions and statements were: (1) whether, during a prospective juror's prior jury service, the jury reached a verdict; (2) an observation, building off a statement by a prospective juror, that "there's people sitting in jail that all they need to do is come up with 100 or 200 bucks" for bail; (3) whether, if appellant testifies and swears to be truthful, the prospective juror would consider appellant credible; and (4) whether, if the punishment phase becomes necessary, the prospective juror would assess the minimum punishment for the offense. Appellant was not denied the opportunity to ask whether any venireperson knew or was related to the prosecutors or the judge; he never attempted to ask those questions.

[6]  In an unpublished opinion, the Amarillo Court of Appeals addressed the portion of article 35.16(c) which provides that a defendant may challenge a prospective juror for cause on the basis that the juror is related within the third degree of consanguinity or affinity to "the person injured by the commission of the offense." *Nunez v. State*, No. 07-17-00123-CR, 2018 WL 3977042, at *2–3 (Tex. App.— Amarillo Aug. 20, 2018, no pet.). In that case, neither attorney asked during voir dire if the jurors knew the minor complainant or her family. *Id.* at *3. After the indictment was read, one juror heard the complainant's last name and informed the

23

## 2. Duty to Disclose Under *Brady v. Maryland*

In his first issue, appellant also argues that the prosecutor had an obligation under *Brady v. Maryland* to disclose that his brother-in-law was a member of the venire.

In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). *Brady* is violated when three requirements are satisfied: (1) the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material. *Ex parte Lalonde*, 570 S.W.3d 716, 724 (Tex. Crim. App. 2019); *Ex parte Chaney*, 563 S.W.3d 239, 266 (Tex. Crim. App. 2018) (stating that defendant

trial court that she might know the parties. *Id.* At a hearing outside the presence of the rest of the jury, the juror was unsure about her exact relationship to the complainant's mother, at one point stating that the complainant's mother was married to the juror's cousin, that the complainant's mother's husband was the juror's first or second cousin, and that the juror's ex-husband's mother was the aunt of the complainant's mother. *Id.* at *1. The complainant's mother stated that her daughter's father "is related to" the juror. *Id.* at *2. The trial court denied the defendant's motion for mistrial. *Id.* The Amarillo Court of Appeals declined to hold that the trial court "had an obligation to determine the degree of the relationship between the juror and the complainant," noting that counsel must ask specific questions to determine if they have the right to challenge a veniremember for cause and that the "parties bear the burden to be diligent during voir dire." *Id.* The court held that defense counsel had the burden to establish that his challenge for cause was proper, which he did not do based on the ambiguous record that did not establish the relationship between the minor complainant and the juror. *Id.* at *3.

need not request disclosure of *Brady* evidence "because the State's duty to disclose is an affirmative one"). The third element, materiality, incorporates a requirement that the defendant must be prejudiced by the State's failure to disclose the favorable evidence. *Lalonde*, 570 S.W.3d at 724 (quoting *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006)).

In a *Brady* analysis, courts have defined "favorable evidence" as "any evidence that, if disclosed and used effectively, may make a difference between conviction and acquittal and includes both exculpatory and impeachment evidence." *Id.* (quoting *Harm*, 183 S.W.3d at 408). Evidence is material only if there is a reasonable probability—defined as "a probability sufficient to undermine confidence in the outcome"—that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). "The mere possibility that the undisclosed information might have helped the defense or affected the trial's outcome does not establish materiality." *Id.* at 725. The State does not have a duty to disclose if the defendant was actually aware of the exculpatory evidence or could have accessed it from other sources. *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011).

Appellant cites the United State Supreme Court's decision in *Smith v. Phillips*, 455 U.S. 209 (1982), for the proposition that a prosecutor's obligations under *Brady* extend to requiring disclosure of information known to the prosecutor about

potential jurors. We disagree with appellant's contention that the Supreme Court held that a prosecutor has a *Brady* obligation to disclose information known about prospective jurors. In *Smith*, during the defendant's trial, one of the jurors submitted an application for a felony investigator position with the district attorney's office, and the two attorneys prosecuting the case learned of this application. 455 U.S. at 212. The prosecutors did not inform the trial court or defense counsel during the trial; instead, the elected district attorney learned of the application after the jury had returned its verdict convicting the defendant, and the district attorney notified the trial court and defense counsel. *Id.* at 213. Upon defense counsel's motion to set aside the verdict, the trial court held a hearing and determined that while the juror was wrong to submit the application during trial, the application "in no way reflected a premature conclusion as to the [defendant's] guilt, or prejudice against the [defendant], or an inability to consider the guilt or innocence of the [respondent] solely on the evidence." *Id.* at 213–14. The defendant sought federal habeas relief, and the federal district court imputed bias to the juror, reasoning that "the average man in [the juror's] position would believe that the verdict of the jury would directly affect the evaluation of his job application," and ordered the defendant released. *Id.* at 214. The Second Circuit affirmed, holding that the prosecutor's failure to disclose the juror's application denied the defendant due process. *Id.*

The United States Supreme Court disagreed that bias must be imputed to the juror and cited several previous cases in which the Court had held, when questions of juror partiality had been raised, that the proper remedy was a hearing to allow the defendant the opportunity to prove actual bias of the juror. *Id.* at 215–17. The Court stated:

> These cases demonstrate that due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that . . . held in this case.

*Id.* at 217. The Court also stated that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor," and it cited *Brady* as an example, noting that, in *Brady*, the defendant's trial "complied with the requirements of due process despite the prosecutor's wrongful suppression" of an admission that was relevant to punishment but not the defendant's guilt. *Id.* at 219. The Supreme Court did not hold in *Smith*

27

that a prosecutor has a duty under *Brady* to disclose information that it knows about prospective jurors.[7]

We agree with the State that *Brady*—which applies to the disclosure of exculpatory and impeachment evidence that is material and favorable to the accused—is not applicable in this case involving the relationships between a juror and one of the prosecutors and a juror and the trial judge. *See Armstrong*, 897 S.W.2d at 365 ("This Court has previously held that the State has no obligation to furnish defense counsel with information on prospective jurors where the information was readily available to the defense on voir dire."). We decline to extend a prosecutor's obligations under *Brady* to the factual circumstances present in this case.

We overrule appellant's first issue to the extent he argues that the prosecutor's conduct in this case violated *Brady v. Maryland*.

### 3. Duty to Disclose Under Michael Morton Act

In his second issue, appellant argues that the prosecutor had a duty under the Michael Morton Act to disclose that his brother-in-law was a member of the venire.

---

[7]    In *Williams v. Taylor*, 529 U.S. 420, 440–41 (2000), a prospective juror failed to disclose that she had previously been married to one of the witnesses, a deputy sheriff, and the prosecutor failed to disclose that he had represented the juror in her divorce from the witness. The Supreme Court reaffirmed that in cases involving juror partiality and the prosecutor's failure to disclose connections with prospective jurors, the remedy is an evidentiary hearing to allow the defendant the opportunity to establish actual bias on the part of the juror or that the prosecutor's "silence so infected the trial as to deny due process." *Id.* at 442. The Supreme Court did not hold that the prosecutor had an obligation under *Brady* to disclose information about prospective jurors.

The Michael Morton Act—Code of Criminal Procedure article 39.14—

governs discovery in criminal cases. It provides, in relevant part:

(a)  [A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. . . .

. . . .

(h)  Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

. . . .

(k)  If at any time before, during, or after trial the state discovers any additional document, item, or information required to be disclosed under Subsection (h), the state shall promptly disclose the existence of the document, item, or information to the defendant or to the court.

TEX. CODE CRIM. PROC. ANN. art. 39.14. "Materiality for purposes of Article

39.14(a) means that 'there is a reasonable probability that had the evidence been

disclosed, the outcome of the trial would have been different.'" *Watkins v. State*, 554

S.W.3d 819, 822 (Tex. App.—Waco 2018, pet. granted); *see Carrera v. State*, 554 S.W.3d 800, 802 (Tex. App.—Waco 2018, no pet.) ("Evidence must be 'indispensable to the State's case' or must provide a reasonable probability that its production would result in a different outcome to be considered material and subject to mandatory disclosure under Article 39.14(a).").

Appellant argues that the prosecutor was required to disclose his familial relationship to a prospective juror under article 39.14 because that statute permits discovery of anything "that constitute[s] or contain[s] evidence material to any matter involved in the action," and information concerning a familial relationship between a prosecutor and a prospective juror is material to jury selection. The State, however, argues that the information at issue in this case—information that a prospective juror was the prosecutor's brother in law—does not constitute the type of information that article 39.14 was designed to require a prosecutor to make available to the defense. We agree with the State.

Article 39.14(a) requires the State, upon request by the defense, to "produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant" of a list of items, including: (1) offense reports; (2) any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers; and (3) any designated books, accounts, letters, photographs,

or objects, or other tangible things not otherwise privileged. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a). Information that the prosecutor is related to a prospective juror does not fit into any of the categories required to be produced by the State under article 39.14(a).

To the extent appellant argues that the information at issue in this case falls within the phrase "evidence material to any matter," we agree with the State that this phrase is limited by the immediately preceding phrase of "objects or tangible things not otherwise privileged." *See Shipp v. State*, 331 S.W.3d 433, 437 (Tex. Crim. App. 2011) (stating that under *ejusdem generis* canon of statutory construction, "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words").

We hold that article 39.14(a) does not obligate the State to disclose that a prosecutor has a familial relationship with a prospective juror.

We overrule appellant's second issue.

### 4.    Whether Prosecutor and Trial Judge Had a Duty to Disclose Under Other Law

In his third issue, appellant argues that the prosecutor's and the trial judge's withholding of information concerning their familial relationship to two jurors "demeans public confidence in judicial proceedings" and violates his right to a fair and impartial jury. In light of our holding that appellant forfeited his challenges for

31

cause on this basis because he did not ask questions during voir dire concerning the relationships between the prospective jurors and the prosecutors and the trial judge, we construe this issue as an argument that the prosecutor and the trial judge have an independent and affirmative duty to disclose this information to defense counsel.

The Court of Criminal Appeals addressed a similar question in *Armstrong*, which involved a close friendship between the prospective juror and the prosecutor. In that case, the trial court identified the prosecutor—the county attorney—and three specific members of his staff and asked whether any prospective juror was "so well connected with them or acquainted or associated with them that it might affect your verdict?" *See* 897 S.W.2d at 362. The trial court also asked whether any prospective juror had "any special connection with the County Attorney's office, perhaps a close friend in the office, secretary, investigator or the like?" *Id.* No veniremember answered affirmatively. At the motion for new trial stage, Armstrong presented undisputed evidence that one prospective juror, who served on the jury, had known the county attorney for nearly thirty years and considered him a friend; that her husband and the county attorney had been the best man at each other's weddings; and that her husband had served as the county attorney's campaign treasurer during a prior election and was serving in that position at the time of trial. *Id.* at 363.

On appeal, Armstrong argued that the county attorney had an affirmative duty to disclose this information to defense counsel under Rule 3.09 of the Disciplinary

Rules of Professional Conduct and Code of Criminal Procedure article 2.01, which provided that "[i]t shall be the primary duty of all prosecuting attorneys, including special prosecutors, not to convict, but to see that justice is done."[8] *Id.* at 365 & n.3. The Court of Criminal Appeals noted that the intermediate appellate court "was not convinced that the prosecutor's conduct . . . was contrary to any disciplinary rule or to Article 2.01." *Id.* The court also noted that the court of appeals "could find no authority for the proposition that a prosecutor has an affirmative duty to volunteer information that defense counsel could have easily obtained by questioning the [jury] panel." *Id.* The Court of Criminal Appeals stated that it had previously held that "the State has no obligation to furnish defense counsel with information on prospective jurors where the information was readily available to the defense on voir dire," and it stated that the court of appeals' conclusion "is certainly consistent with these holdings." *Id.* at 365–66. The court concluded by stating, "We cannot say the court of appeals erred to find that there was no prosecutorial misconduct." *Id.* at 366.

Appellant cites three out-of-state cases in which a close relative of the trial judge—two cases involving the judge's spouse and one case involving the judge's

---

[8] Rule 3.09, entitled "Special Responsibilities of a Prosecutor," provides that the prosecutor in a criminal case shall, among other things, "make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense . . . ." TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 3.09(d), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A (Tex. State Bar R. art. X, § 9).

mother—ended up sitting on the jury and the convictions were later reversed on appeal. *See State v. Tody*, 764 N.W.2d 737 (Wis. 2009), *abrogated by State v. Sellhausen*, 809 N.W.2d 14 (Wis. 2012); *Elmore v. State*, 144 S.W.3d 278 (Ark. 2004); *People v. Hartson*, 160 A.D.2d 1046 (N.Y. App. Div. 1990) (per curiam); *but see People v. Richardson*, — P.3d —, 2018 WL 4017882, at *4–9 (Colo. App. 2018) (holding that while "it would have been prudent" for trial judge to excuse his wife as veniremember, her service on jury did not result in "fundamental unfairness," and judge's error in allowing her to serve was not "so egregious that it requires reversal under the plain error standard").

In each of the cases in which the appellate courts reversed the defendant's convictions, defense counsel was aware during voir dire that a relative of the trial judge was on the venire. *See Tody*, 764 N.W.2d at 741 (trial court asked veniremember if she had "a relative employed in the law enforcement related capacity," and veniremember responded, "[t]he judge" and that she was the judge's mother; trial judge denied defense counsel's challenge for cause); *Elmore*, 144 S.W.3d at 279 (defense counsel challenged veniremember for cause on basis that she was trial judge's wife, but judge refused to strike, stating, "if she's not qualified, you'll need to show it"); *Hartson*, 160 A.D.2d at 1047 (trial judge's wife served as juror without challenge for cause "notwithstanding full disclosure of her relationship to" trial judge). Thus, none of these cases hold that the trial judge had an affirmative

duty to disclose his familial relationship to the prospective juror, and none of these cases hold that the failure to disclose this information is a basis for the appellate court's decision to reverse.

Moreover, the Court of Criminal Appeals has held on multiple occasions that challenges for cause are forfeitable and that a defendant may waive his constitutional right to an impartial jury. *See, e.g.*, *Webb*, 232 S.W.3d at 112–113; *Morales*, 253 S.W.3d at 697; *Delrio*, 840 S.W.2d at 445–46. We therefore decline to impose an affirmative duty on prosecutors, defense attorneys, and trial judges to sua sponte disclose that they have a familial relationship with a prospective juror. We hold that the trial court did not abuse its discretion in denying appellant's motion for new trial.

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Goodman, and Countiss.

Justice Goodman, concurring.

Publish. TEX. R. APP. P. 47.2(b).

35